543 F.2d 10
 93 L.R.R.M. (BNA) 2677, 79 Lab.Cas. P 11,714
 PEABODY COAL COMPANY, Plaintiff-Appellee,
v.
LOCAL UNIONS 1734, 1508, 1548, and District No. 23, United
Mine Workers ofAmerica, Defendants-Appellants.
 No. 75-2136.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 29, 1976.
Decided Oct. 19, 1976.
 
 Jerry P. Rhoads, Madisonville, Ky., Steven B. Jacobson, Harrison Combs, Washington, D. C., for defendants-appellants.
 Ronald M. Sullivan, Sandidge, Holbrook & Craig, Owensboro, Ky., Joseph M. Touhill, St. Louis, Mo., for plaintiff-appellee.
 Before EDWARDS, PECK and MILLER*, Circuit Judges.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court, finding the defendants-appellants guilty of being in civil contempt of a June 6, 1972 temporary restraining order. This contempt order fined the Local Unions 1734, 1508 and 1548 of the United Mine Workers of America a total of $6,500 each, and District 23 of the Union $13,000, all payable to Peabody Coal Company.
 
 
 2
 The case arose out of a series of work stoppages in June, 1972 at three of Peabody's Western Kentucky mines, Star, Ken and River Queen. In all three mines, miners are members of the United Mine Workers of America, and Peabody and the UMWA, all its Locals and Districts, were parties to the National Bituminous Coal Wage Agreement of 1971. These work stoppages involved disputes at each of the mines concerning the inspection of the conveyor belts which carry the coal out of the mines. The Union wanted the Company to post the belt examiner jobs for union members holding First Class Certificates. Peabody brought suit in the district court charging that the Unions were in violation of the collective bargaining agreement which required them to submit such disputes to arbitration, and in response the district court, on June 6, 1972, issued a temporary restraining order, ordering:
 
 
 3
 "1. The defendants, and each of them, shall submit their disputes and disagreements referred to in the complaint to the grievance procedure and arbitrate the said dispute in accordance with the grievance procedure as stated in the collective bargaining agreement between the parties, and
 
 
 4
 "2. The defendants, and each of them, and their respective members, officers, agents, servants, and employees . . . are enjoined and restrained from:
 
 
 5
 (a) Engaging in strikes, work stoppages, or concerted refusals to work at plaintiff's Star, Ken, and River Queen Underground Mines . . . over the disputes . . . involving job classifications, certifications, and applicable contract rates of pay for persons who inspect and examine coal-conveying belts . . .
 
 
 6
 (b) Violating or continuing to violate the contract by refusing to submit to the grievance procedure . . . and
 
 
 7
 (c) Inducing, instructing, persuading, or encouraging plaintiff's employees at plaintiff's Star, Ken and River Queen Underground Mines to engage in a strike, work stoppage or other economic activity against plaintiff . . . ."
 
 
 8
 On June 14, 1972, after a brief hearing during which no evidence was taken, the district court found the Locals and District 23 to be in contempt of the June 6 temporary restraining order. On June 20 and 21 the district court held a preliminary injunction hearing, at the close of which the district court issued its injunction and found "each of the defendants still to be in contempt of this Court." On appeal, this court vacated the contempt order, reversed judgment on the ground that the Unions were denied an evidentiary hearing and remanded the case for further proceedings. Peabody v. Local Unions Nos. 1734, 1508, and 1548 and District 23, United Mine Workers of America, 484 F.2d 78 (6th Cir. 1973).
 
 
 9
 On remand, all parties were afforded an opportunity to offer additional evidence, but instead stipulated that the district court should decide the case based on the briefs of the parties and the evidence received at the preliminary injunction hearing. The district court entered its decision on May 16, 1975, reaffirming the finding of contempt and reimposing the fines.
 
 
 10
 Peabody argued below, and the district court apparently agreed, that because the Union members did not go back to work after the June 6 order was issued, the Unions should be held in contempt. The district court stated that "a union that is functioning, asserting its power and right to act as the bargaining agent, must be held responsible for the mass action of its members," because "(m)en just do not act collectively without leadership." We reject the district court's holding in this regard as not in accordance with the established law of this circuit.
 
 
 11
 This court has repeatedly recognized that a union may only be held responsible for the authorized or ratified actions of its officers and agents. North American Coal Corp. v. Local Union 2262, United Mine Workers of America,497 F.2d 459, 466-67 (6th Cir. 1974); and see, Blue Diamond Coal Co. v. UMWA, 436 F.2d 551 (6th Cir. 1970), cert. denied, 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863 (1971); Lewis v. Benedict Coal Corp., 259 F.2d 346 (6th Cir. 1958), aff'd by an equally divided Court, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Garmeada Coal Co. v. International Union U.M.W.A., 230 F.2d 945 (6th Cir. 1956). "In each of these cases this court recognized that where a union did not call, authorize, or encourage a strike, and, on the contrary, employed its authority to oppose it, no liability for an unauthorized or wildcat strike could be attributed to the union." North American Coal Corp., supra, at 467. There is no precedent in this circuit to support the contention that the "mass action" of union members is, in and of itself, sufficient to bind the Union. Moreover, the very terms of the June 6 order did not require any affirmative action on the part of the Local Unions or District 23 aimed at getting the membership back to work. The wording of the temporary restraining order in this regard was prohibitory in nature, and from this we decline to infer a requirement that the Unions use their "best efforts" to end the work stoppages. However, the fact is that evidence at the preliminary injunction hearing indicates that the Unions went beyond the requirements of the temporary restraining order in urging the membership to return to work. The district judge made no finding that the Unions or their officers induced, persuaded or encouraged the work stoppages in violation of the prohibitions of the temporary restraining order.
 
 
 12
 Peabody also maintains that the Unions were in violation of the temporary restraining order by virtue of their failure to submit the dispute to arbitration. The Unions' position in the district court was that the court could not require them to submit their grievances to arbitration since a safety dispute was at issue. However, the recent decision of the Supreme Court in Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), holding that the mandatory grievance procedure of the National Bituminous Coal Wage Agreement was applicable to "safety disputes," has settled that issue adversely to the Unions and they do not argue it on appeal. The Unions do submit that the district court found them to be in contempt of the temporary restraining order only by virtue of the continuing work stoppages, and not because of their failure to arbitrate. We do not agree that the district court's decision can be so limited.
 
 
 13
 It is clear that the June 6 order required the Unions to submit the dispute regarding belt examiners to "the grievance procedure and arbitrate the said dispute." As the district court found, "The work stoppages were over grievances which the parties were contractually bound to arbitrate. Peabody was entitled to the temporary restraining order and the Union was required to obey it on pain of contempt." The uncontroverted evidence was that the matter was not submitted to arbitration.
 
 
 14
 At the time of the June 6 order, the contract grievance procedure at the Star and Ken mines had reached the "third step," which required District 23 to handle the matter from that point on. At the River Queen mine there had been no formal grievance filed with respect to the belt examiner jobs prior to the strike which occurred there on June 3, 1972. The district court found that "when the strike occurred (at River Queen), the superintendent was told by members of the mine committee and the Local president that . . . District 23 had 'called the shots' up to that time, and they would just let the District continue to do so." The evidence at the preliminary injunction hearing also indicated that subsequent to the issuance of the temporary restraining order, it was District 23 which was negotiating with the Company regarding settlement of the dispute. We conclude that the record clearly shows a failure by District 23 to submit the dispute to arbitration, and thus that District 23 was properly found to be in contempt of the June 6 order. However, we also conclude that the record does not support a finding that the Locals failed to arbitrate in accordance with the June 6 order, since the matter was virtually out of their hands.
 
 
 15
 As to the appellants' contentions regarding the amount of the fines imposed by the district court, we note that Peabody pleaded and proved damages exceeding $400,000, and that the district court did not establish the fines on a per day basis, but rather fined District 23 a flat sum, $13,000. We cannot hold the district court's imposition of this fine to be in error.
 
 
 16
 Therefore, the judgment of the district court as to District 23 is affirmed, and as to Local Unions Nos. 1734, 1508, and 1548 is reversed.
 
 
 
 *
 Honorable William E. Miller died April 12, 1976, and did not participate in the decision of this case