The **ALLOY CAST STEEL COMPANY**
et al., **Plaintiffs,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, et al., Defendants.**

**Civ. No. C 75–374.**

United States District Court,
N. D. Ohio, W. D.

March 31, 1977.

Peper, Martin, Jensen, Maichel & Hetlage, by Richard E. Jaudes, St. Louis, Mo., Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, by Theodore Rowen for plaintiffs.

Clayman & Jaffe, by John W. Kenesey, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, District Judge.

This action arises out of a "wild-cat" strike at the plant of the plaintiff The Alloy Cast Steel Company (hereafter referred to as the plaintiff) in Marion, Ohio, starting on the morning of September 12, 1975, and ending with the return of the striking employees at the beginning of work on September 22, 1975.

The action was commenced in order to get a temporary restraining order requiring the employees to return to work. An order was issued and served upon the employees on September 17, but the employees ignored it, continuing to stay away from work on September 18 and 19, which were working days.

A motion to show cause why the employees or the defendants should not be punished for contempt of court was issued, but the parties in their briefs agree that the claims for injunction and presumably the contempt charge are now moot.

Ultimately after a great deal of technical proceedings, the matter was assigned for trial. In these preliminary proceedings the Court refused to certify the action as a class action against the individual employees or members of the defendant United Steelworkers of America Local Union No. 1947 (hereafter referred to as the defendant Local), but did hold that if the defendant Unions were not held liable, the individual defendants might be so held if facts establishing their individual liabilities were proven. The Court's memorandum dealing with this problem, D.C., 70 FRD 687, filed March 19, 1976, is incorporated herein by reference, as fully to all intents and purposes as if set forth at length herein. There is also further reference to this matter in the Court's memorandum filed September 29, 1976.

The Court ordered a bifurcated trial, in which the liability issues would be tried separately from the damage issue. The trial commenced on October 12, 1976, and concluded on October 14, 1976. It was heard without a jury. This memorandum will serve as the Court's findings of fact and conclusions of law resulting from the hearing.

A number of technical matters were reserved for ruling at the trial, and must now be disposed of.

The plaintiff, Alloy Cast Steel, Inc., is alleged to be a wholly owned subsidiary of the plaintiff controlling all the plaintiff's manufacturing operations. The defendants deny these allegations, and deny that there is any labor agreement with anyone other than the plaintiff. No evidence was offered as to the relationships among the plaintiff, its subsidiary, and the defendants. It appears to be conceded that the plaintiff Alloy Cast Steel, Inc. should be dismissed as a party to this action, and it will be so dismissed.

The defendants moved for judgments in their favor at the close of the plaintiff's case. The Court reserved ruling upon the

motions. Defendants did not stand upon their motion, but proceeded to offer evidence. Defendants renewed their motions at the close of all the evidence. Ruling was again reserved. It is clear that if the evidence were viewed in the light most favorable to the plaintiff, a judgment could not be rendered in favor of the defendants. These motions will therefore be overruled, and the case decided upon its merits.

There were some objections to specific items of evidence, as to which the Court did not rule at the time. With one exception, these objections will be overruled, and the evidence received. That exception relates to testimony of the defense witness William Burga concerning statements made to him by the defendant Ellis Oiler, president of the defendant Local. Upon representation that the defendant Oiler was present and would also testify to the statements, the Court permitted Burga to testify. At the close of the case without the defendant Oiler having taken the stand, the plaintiff moved to strike the disputed testimony. The court reserved its ruling at the time, but now grants the motion and strikes the disputed testimony.

The evidence in the case was voluminous, and in some details conflicting, but an extensive analysis of it is not required to reach a conclusion.

Essentially, the evidence established that the agreement between the plaintiff and the defendant United Steelworkers of America, AFL–CIO, (hereafter referred to as the defendant international), was due to expire in October, 1976. There had been a good deal of friction among the parties, even though the agreement provided for binding arbitration of grievances and contained a "no strike" clause. In spite of this, there had been a number of wildcat strikes prior to September 12, 1975.

On September 3, 1975, William Burga, who was the representative of the defendant international responsible for dealing with the plaintiff and the defendant local, attended a fourth-step grievance meeting, accompanied by the entire Union Grievance Committee of the defendant local, which included all of the individual defendants except the defendant Paul Chappell. After the subject of the grievances was discussed, the defendant Oiler raised an objection to certain job-posting procedures, which resulted in a heated argument between him and the plaintiff's representative, John Litteral, Plant Superintendent. Burga intervened by saying in substance "We'll shut the damn place down if we have to to straighten it out." Litteral at once terminated the meeting, taking the position that the bare mention of work stoppage made any discussions of any kind completely impossible. This arbitrary attitude upon the part of plaintiff's management undoubtedly was a contributing factor to the difficulties involved here. The plaintiff seems to be unaware that the policy of the law favors negotiation and arbitration, not litigation. Negotiations are not apt to be very successful when one party, for whatever reason, refuses to talk at all.

Whether this quarrel had anything to do with the subsequent work stoppage on September 12 is highly doubtful. The plaintiff set great store by it as showing that both the defendant international and the defendant local were thereby made entirely responsible for the subsequent work stoppage, and in violation of the no-strike provisions of the labor contract.

While the statement stands undenied on the record, Burga having testified only that he had no recollection whatsoever of the meeting of September 3, and that he would not make such a statement, it is very common in litigation to see overwhelming proof that a person has in fact said or done something that he maintains stoutly he would never say or do. The Court is unable to give Burga's statement any significance with relation to the issues involved in the case. Not every careless or angry statement by an agent is sufficient to bind his principal. Especially is this true if the statement is one which it is clearly beyond the authority of the agent to make.

The defendants contend that the plaintiff may not succeed in this action because under the decision of *Buffalo Forge Co. v.*

*United Steelworkers of America*, 428 U.S. 398, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) the only remedy for a wildcat strike is a resort to arbitration under the grievance procedure provided in the labor agreement. Defendants raise this argument for the first time after trial in their post trial brief. Plaintiff responds that the *Buffalo Forge* decision does not require this Court to stay proceedings pending arbitration, and further argues that even were the collective bargaining agreement susceptible of an interpretation requiring arbitration of plaintiff's claims for damages defendants waived any right to insist on arbitration of the claims by failing to assert the right before trial.

■ *Buffalo Forge* does not stand for the proposition that an employer must always submit his claims for damages for an alleged violation of a no-strike clause in a collective bargaining agreement to arbitration where the labor agreement provides a grievance procedure which includes arbitration as the final step. Whether a timely motion for a stay of proceedings should be granted pending arbitration of such claims "is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). An employer cannot be compelled to submit a claim to arbitration unless he has agreed to do so under the collective bargaining agreement. *Atkinson v. Sinclair Refining Co.*, supra; *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers Intl.*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ The law in this area is clear, however, that there is a presumption of arbitrability with regard to labor disputes with doubts to be resolved in favor of arbitrability. *See e. g. Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377–78, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, supra, 363 U.S. at 582–83,

80 S.Ct. 1347; 29 U.S.C. § 173(d). The standard to be applied as set forth by the Supreme Court in such cases is that:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Nav. Co., supra*, at 582–83, 80 S.Ct. at 1353.

■ Within these limits, it has been recognized that an employer cannot be compelled to arbitrate his claim for damages for an alleged violation of a no-strike clause in the labor agreement where the mandatory grievance procedure provided in the labor contract is limited to employee grievance—the procedure being employee oriented and solely employee initiated. *See Atkinson v. Sinclair Refining Co., supra; Friedrich v. Local No. 780, IUE–AFL–CIO–CLC,* 515 F.2d 225 (5th Cir. 1975); *Faultless Div. v. Local L. No. 2040 of Dist. 153 I.M. & A.W.,* 513 F.2d 987 (7th Cir. 1975); *Affiliated Food Distributors, Inc. v. Local Union No. 229,* 483 F.2d 418 (3d Cir. 1973), *cert. denied,* 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974); *Firestone Tire & Rubber Co. v. Intl. Union,* 476 F.2d 603 (5th Cir. 1973); *G. T. Schjeldahl Co., Packaging Mach. D. v. Local Lodge 1680,* 393 F.2d 502 (1st Cir. 1968); *Boeing Co. v. Intl. Union, U.A., A. & A. Imp. Wkrs.,* 370 F.2d 969 (3d Cir. 1967); *Oxco Brush Div. of Vistron Corp. v. Intl. Ass'n. M. & A. W., AFL–CIO,* 93 LRRM 2721 (D.Ct.M.D.Tenn.1974), *aff'd* 538 F.2d 329 (6th Cir. 1976), *cert. denied* —— U.S. ——, 97 S.Ct. 808, 50 L.Ed.2d 790 (1977).

■ It is the opinion of this Court that the mandatory grievance procedure provided under Article 14 of the collective bargaining agreement considered herein is limited to employee grievances. The first step of the procedure is initiated by the "aggrieved employee." The second, third, and fourth steps require exhaustion of the prior steps and action on the part of the aggrieved employee, the grievance committee, or international union representative to place

the matter before the company for disposition. Although under Step 5 either party may request arbitration, such requests are limited to matters raised at the fourth step and therefore the provision concerns employee grievances. *See Friedrich v. Local No. 780, IUE–AFL–CIO–CLC, supra; G. T. Schjeldahl Co., Packaging Mach. D. v. Local Lodge 1680, supra.*

The mandatory grievance procedure which includes a final step providing for binding arbitration is, therefore, totally employee oriented and initiated. The Court finds further support to such a conclusion in view of the fact that the sole reference to employer initiated grievances is under § 14.3 of the agreement which is not mandatory but requires further consent of the parties. The requirement of mutual consent of the parties makes such an alternative non-mandatory and not a basis upon which to compel exhaustion of contract remedies by plaintiff. *Friedrich v. Local No. 780, IUE–AFL–CIO–CLC, supra* at 230; *see Gangemi v. General Electric Co.,* 532 F.2d 861 (2d Cir. 1976).

■ Furthermore, even were the collective bargaining agreement susceptible of a construction whereby plaintiff was required to arbitrate its claims, by failing to assert the contract right prior to trial defendants waived any right they possessed to require that this dispute be resolved in another forum. *See United Steelworkers of America v. Mesker Bros. Indus., Inc.,* 457 F.2d 91 (8th Cir. 1972); *see also Reid Burton Construction, Inc. v. Carp. Dist. C. of S. Colo.,* 535 F.2d 598 (10th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 188 (1976).

■■ With regard to the dispute itself, however, plaintiff may not prevail simply because the defendant unions were unable to get their members back to work. In order for a union to be held liable in an action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) for breach of a no strike clause in a collective bargaining agreement, the union must be found to have induced, encouraged or condoned the work stoppage. *Southern Ohio*

*Coal Co. v. U. M. W. of America,* 551 F.2d 695, 699 (6th Cir. 1977); *Peabody Coal Co. v. Local Unions 1734, 1508, 1548,* 543 F.2d 10, 12 (6th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). The failure to employ "best efforts" to curtail the work stoppage is not a basis in itself of liability. *Id.* Where, as here, the international took steps both directly and indirectly through staff representative Burga to get union members back to work, there is no basis for imposing liability upon said defendant. The defendant international did not either through action or inaction encourage, induce, or condone the strike. The union is clearly not liable for purely spontaneous wildcat strikes. *North American Coal Corp. v. Local 2262, U.M.W. of America,* 497 F.2d 459, 467 (6th Cir. 1974); *Blue Diamond Coal Co. v. U.M.W. of America,* 436 F.2d 551, 556 (6th Cir. 1970); *Lewis v. Benedict Coal Corp.,* 259 F.2d 346, 351 (6th Cir. 1958), *aff'd by an equally divided court,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

■ While plaintiff's case is factually stronger against the defendant local than against the defendant international it is still insufficient to show that the defendant local as an organization either authorized or encouraged the wildcat strike. The plaintiff's contention that the mass actions of the members and officers of the defendant local constitute actions of the local itself is disposed of by the case of *Peabody Coal Co. v. Local Unions, 1734, 1508, 1548, supra* at p. 12. This case holds that "There is no precedent in this circuit to support the contention that the 'mass action' of union members is, in and of itself, sufficient to bind the Union."

However, a different situation is presented insofar as the individual defendants are concerned. Even though the Court has been unwilling to find that their individual actions were taken in a representative capacity by those who were officers of the defendant local, they had no right to violate their contract with the plaintiff.

Although, as this Court pointed out in its memorandum filed March 19, 1976, the Su-

preme Court specifically did not decide the question of liability of individual employees for violation of a no strike agreement in *Atkinson v. Sinclair Refining Co., supra,* the question was again raised in *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) where the Court holds (pp. 199, 200, 83 S.Ct. 267) that suit may be brought under § 301 against individual union members for violation of a no-strike clause. *Hines, et al. v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1975) specifically holds that, "Section 301 contemplates suits by and against individual employees . . . ." While the law forbids judgments against the individual members of the union for violation of the labor agreement by the union, *Atkinson v. Sinclair Refining Co., supra* at p. 249, where, as here, there is no actionable violation by the unions, the Court is not foreclosed from hearing and deciding whether the individual members violated the contract.

■ In this case the evidence leaves no doubt whatever that the individual defendants were on strike. Not a single one of them took the stand to deny this fact. The plaintiff's plant was open, and they were notified to come to work. Both the defendant unions notified the individual defendants, both orally and in writing, that they must go back to work. They were physically present in the area of the plaintiff's plant during working hours, where a sign had been erected saying that a strike was on. Every one of them could have protected himself by going back to work. No one of them is responsible for what other individuals did, whether or not they were members of the unions, but each of them must take the consequences of his own actions. They could easily have defended themselves from criticism by their peers by saying they did not want to go back to work, but had to yield to the superior force of this Court's injunction. However, they violated that order, as well as their agreement. They must respond in damages for their breach of contract.

THEREFORE, for the reasons stated, good cause therefor appearing, it is

ORDERED that the clerk enter judgment in favor of the defendants against the plaintiff Alloy Cast Steel, Incorporated; and it is

FURTHER ORDERED that the claim of the plaintiff for injunctive relief be, and it hereby is, dismissed as moot; and it is

FURTHER ORDERED that the motion of the plaintiff to strike the testimony of the witness William Burga concerning his conversations with the defendant Ellis Oiler be, and it hereby is, sustained, and the testimony is stricken; and it is

FURTHER ORDERED that all other objections to the introduction of evidence upon which ruling was reserved should be, and they hereby are, overruled, and the evidence received; and it is

FURTHER ORDERED that the motions of the defendants to dismiss made at the close of plaintiff's case and renewed at the close of all the evidence should be, and the same hereby are, overruled; and it is

FURTHER ORDERED that judgment be granted in favor of the defendant United Steelworkers of America, AFL–CIO, and the defendant United Steel Workers of America, AFL–CIO, Local Union No. 1947 and against the plaintiff, The Alloy Cast Steel Company, and that said defendants shall go hence without day, and recover their costs herein expended, and the clerk shall enter judgment in accordance herewith; and it is

FURTHER ORDERED that judgment be granted in favor of the plaintiff, The Alloy Cast Steel Company, against the defendants ELLIS OILER, WILLIAM SPARLING, PAUL CHAPPELL, WILLIAM MARTIN, ELBERT COMBS, LACEY GIBSON, CHARLES MILAR, and THOMAS STONE, and the clerk shall enter judgment in accordance herewith; and it is

FURTHER ORDERED that this matter be continued to a date to be fixed for hearing upon the issue of the amount of damages; and it is

FURTHER ORDERED that a pre-trial conference be held on Friday, the fifteenth day of April, 1977, at 1:30 o'clock P.M.

IT IS SO ORDERED.