**PUTNAM FABRICATING COMPANY,**
**Plaintiff,**

v.

**Roger NULL et als., Defendants.**

**Civ. A. No. 77–2277–CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

March 9, 1979.

Sarah E. Smith and Ricklin Brown, Charleston, W. Va., for plaintiff.

James M. Haviland and James B. McIntyre, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION

KNAPP, Chief Judge.

The issue in this case is whether an employer may maintain an action for damages under the provisions of Section 301 of the Labor Management Relations Act,[1] 29 U.S.C. § 185, solely against employee union members where such employees engaged in an unauthorized strike which resulted in work stoppages at the employer's plant.

On June 8, 1977, defendants, then employees of plaintiff and members of Local Union No. 667, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, walked off the job at plaintiff's plant in Bancroft, West Virginia. Plaintiff demanded that defendants return to work but each refused. The parties agree that Local No. 667 neither authorized nor ratified the walkout.

Article 16 of the Collective Bargaining Agreement between the union and plaintiff authorizes discharge of any employee entering into a work stoppage unauthorized or unratified by the union. Pursuant to those provisions, plaintiff exercised that right and discharged all of the defendants. A picket line was then formed, which resulted in the closing of plaintiff's plant, causing economic loss to the plaintiff. This action followed.

Section 301(b) of the Labor Management Relations Act reads in pertinent part:

"... any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

Plaintiff contends that an individual employee is insulated from personal liability only in a case where an action is brought against both the employee and his union, *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), or against an employee where his union was at least arguably liable. *Williams v. Pacific Maritime Assoc.*, 421 F.2d 1287 (9th Cir. 1970). Plaintiff therefore contends that Section 301(b) furnishes the substantive vehicle which allows a cause of action for damages to be maintained against an employee under the circumstances hereinbefore set forth.

It is axiomatic that Section 301(b) should be read in a way so as not to defeat its Congressional aim. See, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

"The Labor–Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. *Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy.* The range of judicial inventiveness will be determined by the nature of the problem. [Emphasis supplied]. 353 U.S. at 457, 77 S.Ct. at 918.

It is without question that the instant cause of action is without the "express statutory sanction" of Section 301. It is therefore necessary to look to the "policy of the legislation" in order to determine the outcome of the issue at bar.

The question thus becomes what was the purpose behind enactment of Section 301, and particularly the quoted portion of Section 301(b).

The "Danbury Hatters" case, *Loewe v. Lawlor*, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1908), was the ontogeny of Section 301(b). In that case the company was awarded judgment against both the individual members of the union and the union itself. Because the union was insolvent,

---

1. Often referred to as the "Taft–Hartley Act."

execution was made upon the personal assets of the members in satisfaction of the judgment. Referring to the end result of "Danbury Hatters," Senator Taft, one of the sponsors of the Labor–Management Relations Act, stated: "[w]e do not want to perpetrate such a condition." 92 Cong.Rec. 5705 (1946).

The Seventh Circuit squarely faced the issue at bar in *Sinclair Oil Corp. v. Oil, Chemical and Atomic Workers Int. Union*, 452 F.2d 49 (7th Cir. 1970). Basing its decision regarding the issue at hand on the inescapable conclusion that Congress did not intend for such an action to lie as is pleaded in plaintiff's complaint.

To permit plaintiff's cause of action to stand would be allowing plaintiff to do indirectly what the Act directly forbids. More to the point, the bottom line of Section 301(b) is to insulate employees from having to be liable in damages for their unauthorized activity. It is illogical to say that under Section 301 an employer may not collect damages from an employee when the employee and the union are both defendants but may collect damages when only the employee is sued.

Plaintiff relies on two district court cases which have addressed themselves to the instant issue. *Alloy Cast Steel Co. v. United Steelworkers of America*, 429 F.Supp. 445 (N.D.Ohio 1976), and *New York State United Teachers v. Thompson*, 459 F.Supp. 677 (N.D.N.Y.1978), hold that a damage suit may be maintained solely against individual employees under the provisions of Section 301.

The district court in *Alloy Cast Steel* based its decision for the most part on the case of *DuQuoin Packing Co. v. Meat Cutters Local P–156*, 321 F.Supp. 1230 (N.D.Ill. 1971), which held individual members could be subject to a money damage claim. However, the *DuQuoin Packing* district court is within the Seventh Circuit and *Sinclair Oil* was decided nearly ten months after *DuQuoin Packing*, leaving little doubt that DuQuoin Packing has been, at least impliedly, disapproved.

Relying heavily on *Alloy Cast Steel* the district court in *New York State Teachers* also answered the issue at bar in the affirmative. It pointed out—as does the plaintiff herein—that the Supreme Court has specifically reserved this question. See, *Smith v. Evening News Assoc.*, 371 U.S. 195, 199–200, 83 S.Ct. 267, 269–270, 9 L.Ed.2d 246 (1962). While this is true, that fact could hardly be used as precedent to support plaintiff's argument.

The germane portions of the legislative history of Section 301 are set forth in both *Textile Workers* and *Sinclair Oil*. From a plain reading of those portions, it is abundantly clear that the aim of Congress was to prevent another "Danbury Hatters" from occurring.

This Court's decision that this action may not be maintained against the defendants individually does not leave the plaintiff—or any other employer—without a remedy for any wrong suffered by reason of wildcat strikes. The remedy so afforded is that of the right to discharge a culpable employee.

"But there is another more formidable argument against individual liability apart from congressional intent in relations to section 301. Sections 7 and 8 regulate wildcat strikes on the assumption that the severest penalty inflicted upon an unprotected employee is discharge. Since the question of whether an employee may be discharged or replaced is central to the scheme of protected and unprotected activity, a damage suit against workers would be inconsistent with federal law because the Act assumes that discharge is the ultimate penalty.[2]

In view of the foregoing, the stated issue is answered in the negative.

Judgment in accordance with this opinion will be entered.

---

**2.** Gould, "The Status of Unauthorized and 'Wildcat' Strikes Under the National Labor Re- lations Act," 52 Cornell L.Rev. 672, 704 (1967).