**ITT ELECTRO–OPTICAL PRODUCTS DIVISION OF ITT CORPORATION, Plaintiff,**

**v.**

**ELECTRONIC TECHNOLOGY CORPORATION, et al. Defendants.**

No. MBD 94–61.
Civ. A. No. 94–0030–R.

United States District Court,
D. Massachusetts.

April 20, 1995.

Paul C. Kuhnel, Woods, Rogers & Hazle-grove, Roanoke, VA, for plaintiff.

Charles Sturtevant, III, Braintree, MA, for defendant.

Mark H. Bluver, Springfield, MA, for movant.

*MEMORANDUM AND ORDER WITH RESPECT TO K & M ELECTRONIC INC.'S MOTION TO QUASH (Docket No. 01) AND ELECTRONIC TECHNOLOGY CORPORATION'S MOTION TO COMPEL (Docket No. 04)*

NEIMAN, United States Magistrate Judge.

## INTRODUCTION

The above-captioned lawsuit was filed by Plaintiff ITT Electro–Optical Products Division of ITT Corporation ("ITT") against Defendants Electronic Technology Corporation and others ("ETC") on January 21, 1994 in the Roanoke Division of the United States District Court, Western District of Virginia. K & M Electronics Inc. ("K & M") received a subpoena from ETC relative to certain materials K & M supplied to and correspondence it had with ITT. K & M is a Massachusetts corporation and is not a party to the lawsuit. In response to the subpoena, K & M filed a Motion to Quash in this court (Docket 01). In turn, ITT filed a Motion to Compel (Docket 04). For the reasons stated below, the court denies K & M's Motion to Quash and grants ITT's Motion to Compel in part.

## PROCEDURAL AND FACTUAL BACKGROUND

In its complaint, ITT alleges that the ETC Defendants breached their contractual obligations to ITT by failing to deliver various quantities of a power supply used in ITT's Gen III Night Vision Systems. These systems are used for military purposes under an Omnibus III contract with the United States government. ITT alleges that it advanced sums of money to ETC to build and deliver the power supply necessary to drive the night vision systems and that ETC failed to deliver. It is noted that ITT entered into a confidentiality agreement with ETC with respect to certain trade secrets and other confidential proprietary data relating to the development and manufacture of these power supplies. It is also noted that ITT alleges in its complaint that it holds a 50% undivided interest in various patents, patent applications and copyrights of the proprietary information which ETC claims as its own.

ETC answered the complaint and filed a counterclaim alleging that it was injured by ITT's misrepresentations and misappropriation of ETC's property. In sum, ETC counterclaims (1) that ITT induced ETC to develop the power supplies through misrepresentations, fraud and duress, (2) that ITT misappropriated ETC's trade secrets, (3) that ITT breached its contractual duties to ETC, and (4) that ITT is liable to ETC for unjust enrichment.

K & M is and has been the only supplier of power supplies used by ITT under the Omnibus III contract. In fact, in 1993, ITT informed ETC that it was going to purchase all of the power supplies under the Omnibus III contract from K & M. On September 19, 1994, ETC took the deposition of two K & M officials, both of whom were familiar with K & M's development and production of power supplies under the Omnibus III project. The deposition testimony evidently indicated: (1) that ITT had given K & M approximately 20 to 30 samples of power supplies made by ETC prior to K & M receiving approval as a vendor to make such power supplies under the Omnibus III program; (2) that ITT gave K & M ETC's design schematics of the power supplies and that these documents were still in the possession of K & M; (3) that K & M took x-rays of at least one and possibly more of ETC's power supplies; (4) that K & M had taken apart ("depotted") at least one of ETC's power supplies; (5) that K & M did not have a working relationship with ETC; (6) that K & M did not seek or obtain approval from ITT or ETC to x-ray or depot ETC's devices; and (7) that only K & M has the schematics of the power supplies that K & M sells to ITT under the Omnibus III program. This information, ETC asserts, supports its misappropriation counterclaim against ITT.

At the conclusion of the depositions, ETC asked K & M if it would voluntarily disclose certain information so that ETC could determine if K & M had incorporated ETC's designs into K & M's product. K & M considered ETC's request and ultimately rejected it. It vigorously denies in this court that it ever misappropriated any information from ETC or incorporated such information into its own products.

On or about December 30, 1994, K & M was served with a subpoena seeking the following:

1. A set of the schematics of the power supply being sold to ITT by K & M under the Omnibus III program.

2. A set of the schematics for the Gen III power supply used by K & M before the current Omnibus III power supply.

3. K & M's schematics of a different power supply, i.e., a night mariner power supply, that K & M manufactures for and sells to ITT.

4. All documents reflecting the results of any tests, inspections, evaluations, studies or other reviews by K & M or ITT of night vision goggles supply devices being developed or designed by ETC.

5. All documents including letters, memoranda or other documents reflecting any communications between ITT and K & M relating to ETC or John Piscione.

6. Financial or other documents sufficient to show the number of Omnibus III power supply devices sold to or ordered by ITT.

As indicated, K & M filed a Motion to Quash the subpoena pursuant to Rule 45(c)(1) and (c)(3)(B)(i) of the Federal Rules of Civil Procedure. K & M asserts that the information sought by ETC is confidential and proprietary to K & M and that its disclosure would irreparably damage K & M. K & M suggests, as an alternative, that the court seek the advice of an independent expert with respect to ETC's claim that its proprietary information may have been utilized by K & M.

In response, ETC filed a Motion to Compel, pursuant to Rules 45(d) and 37(a), and offered and proposed a confidentiality agreement and protective order. ETC also indicates that it is willing to make all inspections at the K & M facility and that it was not now seeking copies of any of the schematics set forth in paragraphs 1 through 3 above. ITT has remained mostly silent in this matter,

although it appeared, through counsel, at the hearing on the motions and subsequently indicated its agreement with K & M's suggestion of a court-appointed expert (Docket No. 13).

### DISCUSSION

As the Supreme Court has indicated, "there is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587 (1979) (quoting 8 C. Wright and A. Miller, Fed. Practice and Procedure § 2043 at 300 (1970)). See also *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.1965), *cert. denied* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); and *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d. 323, 325 (10th Cir.1981).

Rule 26(c)(7), which governs the discovery of trade secrets, provides in applicable part as follows:

> Upon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court ... may make any order which justice requires to protect a ... person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) that a trade secret or other confidential research, development, or commercial information, not be disclosed or be disclosed only in a designated way.

By its terms, the rule requires K & M to first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. ETC does not dispute that K & M's power supply information contains trade secrets, but asserts that K & M has not adequately demonstrated that disclosure would be harmful.

K & M asserts that it is a leading designer and manufacturer of high voltage power supplies using image intensification night vision applications by military and commercial personnel. It further asserts that it has developed substantial technical design, manufacturing and marketing expertise which is a major factor in its ability to win business awards from night vision equipment manu-

facturers. Finally, K & M asserts that its production system and facility meet government requirements to be a qualified military supplier and that its facility is designated as secure.

In light of the concessions by ETC and the assertions of K & M, the court finds that the information sought represents trade secrets and that its disclosure could be harmful to K & M. Should, for any reason, K & M's technical information become disseminated, it is clearly possible that a competitor could emerge who has not expended the effort that K & M has in developing its proprietary data.

Having met its burden to show that the information sought is a trade secret and that its disclosure might be harmful, the burden shifts to ETC to establish that the disclosure of trade secrets is relevant and necessary to the action. 8 C. Wright, *supra* § 2043 at 301–02; see also *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986), and *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). Relevancy is construed more broadly during discovery than at trial. *Centurion Industries, supra.* at 326. See also 8 C. Wright, *supra*, § 2008 at 41; and *Flour Mills of America, Inc. v. Pace*, 75 F.R.D. 676, 680 (D.Okla.1977). Fed.R.Civ.P. 26(b)(1) specifically indicates that it is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, the court must balance a need for trade secrets against a claim of injury resulting from disclosure. *Centurion Industries, supra*, 665 F.2d. at 325. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying or embarrassing. *Id.* at 325–326. Determining appropriate safeguards for a protective order is a matter within the court's discretion. *Id.* at 326. See also *Multi–Core, Inc. v. Southern*

*Water Treatment Company,* 139 F.R.D. 262, 263 (D.Mass.1991).

Much of the information sought from K & M by ETC is relevant. In its counterclaims against ITT, ETC asserts that ITT misappropriated ETC's designs and proprietary information with respect to the power supply. K & M is and has been the only supplier of power supplies used by ITT under the Omnibus III contract. The information sought could reveal the extent of ITT's communications with K & M regarding ETC's confidential information. In fact, the information already provided by K & M to ETC, through the deposition of its employees, establishes that K & M was provided ETC's design information by ITT with reference to ETC's power supply. The information sought by ETC could show the extent to which K & M adopted ETC's design. ETC needs to review the schematics and documents of the power supplies K & M manufactured prior to the Omnibus III project and those of the power supplies K & M produced for the Omnibus III project to compare those with ETC's power supplies. This information could demonstrate the misappropriation of its design and the wrongful disclosure of ETC's confidential information to K & M by ITT.

In trade secret battles, "[t]he claim of irreparable competitive injury must be balanced against the need for the information in the preparation of the defense." *Covey Oil Co.,* 340 F.2d at 999. In the instant case, the court believes that the enforcement of much of the subpoena is reasonable: the need for the information by ETC outweighs the possible injury to K & M, and the court has issued a carefully-fashioned protective order to guard against improper disclosure of any trade secrets. The court uses a number of protective procedures. See *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455 (S.D.N.Y.1988); *GTE Products Corp. v. Gee,* 112 F.R.D 169 (D.Mass.1986) (disclosure limited to counsel); *Alloy Cast Steel Co. v. United Steel Workers of America,* 70 F.R.D. 687 (D.C.Ohio 1976), *opinion incorporated,* 429 F.Supp. 445 (N.D.Ohio 1977) (answers to interrogatories limited to defendant and counsel); and *Spartanics, Ltd. v. Dynetics Engineering Corp.,* 54 F.R.D. 524 (D.C.Ill.

1972) (disclosure of confidential research limited to trial counsel and two independent consultants). See also *Multi–Core, supra,* at 263.

■ The court does not adopt K & M's suggestion to have an independent expert advise the court as to whether there is any merit to ETC's assertion that K & M misappropriated ETC's proprietary information. Such a suggestion is not supported by reference to the federal rules or case law, and, while creative, is cumbersome. A protective order is the preferred means and is sufficient in this matter.

### PROTECTIVE ORDER

As the Protective Order issued this day makes clear, the court has not adopted every aspect of the order proposed by ETC and has incorporated some of the suggestions made by K & M. The court acknowledges that the suggestions offered by K & M were made at the court's invitation and that K & M did not waive its right to appeal and/or seek reconsideration of the court's order or any subsequent order.

Specifically, the court has not limited item 1 of the subpoena to the PVS–7 power supply, as requested by K & M on grounds that ETC bid only this single power supply to ITT. The fact that the PVS–7 power supply may have had the "greatest impact" on the Omnibus III contract, as K & M asserts, does not mean that the other power suppliers are irrelevant to the Omnibus III project.

However, the court has acceded to K & M's request to remove all supplier part numbers from the K & M schematics to be provided under item 1. The only apparent relevance of the supplier part numbers would be if ETC were to attempt to manufacture a competing product, a goal disclaimed by it. In fact, it was the absence of competition between K & M and ETC that formed the basis for ETC's claim that any secrecy was unwarranted. See *United States v. IBM Corp.,* 67 F.R.D. 40 (S.D.N.Y 1975). The component values, which K & M represents as fine tuning of its design, must remain in the schematics. ETC should be able to make a valid comparison between its product and

K & M's product with reference to these values.

With respect to item 2 of the subpoena, K & M asserts that the information sought, i.e., the Generation III power supply used by K & M Electronics *before* the current Omnibus III power supply, is overbroad. The court disagrees. It will be otherwise impossible for ETC to make any determination if the changes made in K & M's power supply were based on the information provided by ITT to K & M of ETC's component parts. See *Multi–Core, Inc., supra* (plaintiff's trade secret chemical composition formula was relevant to plaintiff, who needed the formula in order to determine whether the product provided to plaintiff was substandard; plaintiff further required the chemical analysis customarily used by the defendant in order to compare this with the chemical analysis of the material provided to plaintiff in 1989).

With regard to item 3 of the subpoena, the court agrees with K & M and finds that the schematics of the Night Mariner power supply which K & M manufactured *for and sold to* ITT are not specifically relevant to the present action between ETC and ITT. Neither the complaint nor the counterclaim mention the commercial Night Mariner product.

With regard to item 4 of the subpoena, and in light of the representations by counsel that K & M would provide the information sought if required, the court orders that such information be provided accordingly.

With regard to item 5 of the subpoena, the court has fashioned a procedure whereby K & M will provide to ETC any documents or letters between ITT and K & M which relate specifically to ETC and which have not already been provided by ITT directly to ETC.

With regard to item 6 of the subpoena, the court finds that ETC has the ability to obtain the information sought, namely, financial or other documents sufficient to show the number of Omnibus III power supply devices sold to or ordered by ITT, through other means under Rule 26 and consequently orders that this request be denied.

*IV. CONCLUSION*

K & M's Motion to Quash is denied. ETC's Motion to Compel is allowed in part, as detailed above and in the accompanying Protective Order. The Protective Order is incorporated herein by reference.

IT IS SO ORDERED.