**NEW YORK STATE UNITED TEACH-ERS, an Unincorporated Association, Plaintiff,**

v.

**Wesley THOMPSON, Defendant.**

**NEW YORK STATE UNITED TEACH-ERS, an Unincorporated Association, Plaintiff,**

v.

**Ronald CRAWFORD, Defendant.**

Nos. 78–CV–141, 78–CV–142.

United States District Court, N. D. New York.

Oct. 11, 1978.

Bernard F. Ashe, Albany, N. Y., for plaintiff; Gerard John DeWolf, Albany, N. Y., of counsel.

Paul E. Klein, Gen. Counsel, New York Educators Ass'n, Albany, N. Y., for defendants Thompson and Crawford; Robert D. Clearfield, of counsel.

JAMES T. FOLEY, Chief Judge.

## MEMORANDUM—DECISION and ORDER

This litigation presents a novel and important question concerning the scope of § 301 of the Labor Management Relations Act [29 U.S.C. § 185]. That is, this Court is called upon to determine whether § 301 is the source of substantive law for an employer's claim for damages against individual employees wherein it is alleged that the latter committed wholly *individualized and personal* breaches of the terms of an existing collective bargaining agreement between the employer and the employees' bargaining representative; and which under the prevailing circumstances of the alleged breaches may be neither an unfair labor practice nor protected concerted activity.

The two cases before the court involve common questions of law and fact; therefore, they will be consolidated pursuant to Rule 42(a), Fed.R.Civ.Pro. Presently before the Court are defendants' separate motions for judgment on the pleadings in each case. Rule 12(c), Fed.R.Civ.Pro. The factual allegations and respective contentions of the parties are set forth below.

## FACTUAL ALLEGATIONS

The plaintiff, New York State United Teachers, is an unincorporated association with its principal offices in Colonie, New York, within the territorial jurisdiction of the Northern District of New York. The defendants, Ronald Crawford and Wesley Thompson, former employees of the plaintiff, similarly reside within the territorial jurisdiction of this Court.

For purposes of subject matter jurisdiction, it is alleged that the plaintiff is an employer in an industry "affecting commerce" within the meaning of 29 U.S.C. §§ 142(1) and 185(a); and, that the defendants' bargaining agent, the Professional Staff Association, although not a party herein, is "a labor organization representing employees in an industry affecting commerce."

It is further alleged that pursuant to collective bargaining negotiations, the plaintiff and the Professional Staff Association executed a collective bargaining agreement, the duration of which, as amended, runs from September 1, 1974 to August 31, 1979; and, that its terms were operative and applicable to the two employee defendants at all times material to the substantive allegations of the complaint. The initial and amended bargaining agreements are annexed to the complaint as exhibits; therefore, they are considered "a part thereof for all purposes." Rule 10(c), Fed. R.Civ.Pro.

The gravamen of plaintiff's complaint centers upon the defendants' alleged breach of the provisions set forth in Article VI § O of the collective bargaining agreement, such provisions encompassing the definitions, scope, procedures, criteria and conditions relative to "educational leave" for plaintiff's employees.

The specific allegations pertaining to the defendants' alleged breach of the express contractual requirements set forth in the collective bargaining agreement are as follows.

It is alleged that defendant Wesley Thompson was employed by the plaintiff from March 1, 1974 to February 25, 1976; that he applied for and was awarded "extended educational leave" for the purpose of enrolling in various courses at Cornell University; that defendant was accorded a leave of absence from his usual employment with full pay; that such educational leave commenced on September 1, 1975 and concluded on December 20, 1975; and, that on February 25, 1976, defendant submitted a letter of resignation to plaintiff which was accepted.

It is alleged that defendant Ronald Crawford was employed by the plaintiff from July 1, 1970 to February 25, 1976; that he applied for and was awarded an "extended educational leave;" that defendant was accorded full pay during his leave of absence; that such leave commenced on January 26, 1976 and concluded on or about May 28, 1976; and, that on February 25, 1976, de-

fendant submitted a letter of resignation to the plaintiff which was accepted.

By such conduct, it is alleged that defendants breached the express contractual provisions which required: 1) that "an employee shall submit some proof of completion of the leave at the conclusion thereof," Article VI § O subd. 9 of Exhibit 1; Article VI § O subd. 5 of Exhibit 2; and 2) that "an employee who is granted an extended leave shall be obligated to remain in the employ of NYSUT, subsequent to the conclusion thereof, for at least the same duration of such leave. If such employee returns for a shorter period of time, he/she shall pay into the educational leave fund a pro-rata portion of the expenses of such leave." Article VI § O subd. 10 of Exhibit 1; Article VI § O subd. 6 of Exhibit 2. Thus, it is alleged that defendants neither submitted proof of completion of the extended educational leave; nor, remained in plaintiff's employ for a period equal to the duration of the leave.

It is further alleged that defendants Thompson and Crawford incurred expenses during their educational leave of $11,487.77 and $4,059.58, respectively. Finally, it is alleged that defendants Thompson and Crawford are additionally responsible for the sum of $154.21 and $395.54, respectively, such amounts based on a travel advance of $500.00 less the amounts for unreimbursed travel vouchers. Although Article IX § B of the collective bargaining agreement does provide for an annual $500.00 travel advance, there are no provisions directed to the return of unused portions of that annual advance. Nevertheless, plaintiff alleges that the long-established custom and practice between plaintiff and the bargaining unit is to return the advance upon an employee's termination of employment with the plaintiff.

As previously noted, the question presented herein calls for what I believe is a novel interpretation of 29 U.S.C. § 185. Plaintiff places considerable reliance upon the liberal judicial gloss evident in the case law under 29 U.S.C. § 185. Defendants, on the other hand, urge that the language of the statute itself, its legislative history and relevant case law do not contemplate imposition of individual liability upon employees.

## DISCUSSION

As a threshold matter, it is essential to engage in some procedural housekeeping. Defendants have denominated their present motion as one for judgment on the pleadings. Rule 12(c), Fed.R.Civ.Pro. Defendants, however, have not filed answers. Rule 12(c) specifically provides for motions for judgments on the pleadings "[a]fter the pleadings are closed . . ." By contrast, motions premised upon any of the enumerated defenses set forth in Rule 12(b), " . . . shall be made before pleading . . ."

■ As a matter of procedural accuracy, therefore, a Rule 12(c) motion may not be made by a defendant until after he has answered. *See Federal Commerce & Navigation Co. v. M/V Marathonian,* 392 F.Supp. 908, 909 n.1 (S.D.N.Y.), *aff'd per curiam,* 528 F.2d 907 (2d Cir. 1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976); 5 Wright & Miller, Fed. Prac. & Pro. § 1367 (1969). Accordingly, the present motions of the defendants shall be considered as motions to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.Pro.

The Court has given careful consideration to the various contentions urged herein; and, although the question is a close one, it is my judgment that defendants' consolidated motions to dismiss must be denied.

A brief survey of the leading cases decided by the United States Supreme Court under § 301 discloses that this provision has experienced myriad application in the enforcement of collective bargaining agreements. Thus, § 301 has been applied to suits to compel arbitration of employee grievances such as rates of pay, hours of work and work assignments, *e. g. Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); to obtain specific enforcement of an arbitor's award, *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); to recover wage in-

creases in a dispute regarding the validity of the collective bargaining agreement, *Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); to suits against individual union members for engaging in "wildcat" strikes in violation of a no-strike clause, *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); to individual employee suits against their employer to vindicate individual rights arising from a collective bargaining agreement, *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); to union suits against an employer to vindicate employee rights under a contract which the union obtained, *Auto Workers v. Hoosier Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); and, to suits by individual employees against their employer and union for wrongful discharge and breach of the duty of fair representation, respectively. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

Of course, this list is representative only; and, to fully appreciate the antecedents which support these varied applications of § 301, one must begin with the seminal case of *Textile Workers v. Lincoln Mills, supra,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

*Lincoln Mills* was an action brought by the union against the employer, seeking specific performance of the grievance procedures contained in the parties' collective bargaining agreement. The initial importance of *Lincoln Mills* was its rejection of *Association of Westinghouse Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), which, two years earlier, held that § 301 was procedural only. In *Lincoln Mills,* it was flatly stated that § 301:

> authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements.

353 U.S. at 451, 77 S.Ct. at 915.

The final demise of *Westinghouse* was announced in *Smith v. Evening News Association, supra,* 371 U.S. at 199, 83 S.Ct. 267.

The legacy of *Lincoln Mills* for purposes of subsequent § 301 actions was threefold. First, as previously noted, the Supreme Court held that:

> The substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.

353 U.S. at 456, 77 S.Ct. at 918. Further explication of this principle, in terms of the concurrent jurisdiction of State courts and the applicability of local law, was announced in *Dowd Box Co. v. Courtney, supra,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, and *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), respectively.

Second, *Lincoln Mills* examined the legislative history of § 301 and concluded that a narrow reading of the provision would "defeat its policy." 353 U.S. at 456, 77 S.Ct. 912. *Accord, Atkinson v. Sinclair Refining Co., supra,* 370 U.S. at 249, 82 S.Ct. 1318; *Smith v. Evening News Association, supra,* 371 U.S. at 199, 83 S.Ct. 267.

Finally, further reference to the legislative history led the *Lincoln Mills* Court to support its primary holding with the following oft-cited statement:

> Once parties have made a collective bargaining contract, the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.

353 U.S. at 452, 77 S.Ct. at 916, *quoting* H.R.Conf.Rep.No.510, 80th Cong., 1st Sess., p. 42. *Accord, Dowd Box Co. v. Courtney, supra,* 368 U.S. at 511, 82 S.Ct. 519; *Teamsters Local v. Lucas Flour Co., supra,* 369 U.S. at 101 n.9, 82 S.Ct. 571; *William E. Arnold Co. v. Carpenters,* 417 U.S. 12, 16, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974). *See also* S.Rep.No.105, 80th Cong., 1st Sess., pp. 15–18.

To repeat, it is primarily this legacy of *Lincoln Mills* that furnishes the substantive underpinnings for the present breadth and scope of § 301.

It must be further noted, however, that Justice Douglas' prophetic words were also significant to the development of the federal common law in the enforcement of collective bargaining agreements:

The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Textile Workers v. Lincoln Mills, supra,* 353 U.S. at 457, 77 S.Ct. at 918.

The question presented herein lies within that penumbral area of express statutory mandates. The factual posture is unique in that it bears little resemblance to the now-common factual circumstances underlying the majority of § 301 suits.

Unquestionably, the subject matter of dispute has its origins in the collective bargaining agreement executed between plaintiff and defendants' bargaining representative. A perusal of the terms and conditions within Article VI § O show indisputably that they confer certain rights pertaining to educational leave upon both employer and employee. Finally, upon a motion to dismiss, wherein the Court must accept the well-pleaded material allegations as true, the allegation must be accepted at this stage that the employees breached the terms and conditions of the bargaining agreement which conferred specific rights upon the employer.

Moreover, this Court's reading of Article III of the collective bargaining agreement, which provides for the grievance procedures, does not provide that the employer may initiate the grievance machinery. Consequently, it seems evident that plaintiff was compelled to present its grievance in a different forum, which it has now done.

Defendants place considerable reliance upon 29 U.S.C. § 185(b) [§ 301(b)], which provides, in pertinent part:

Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

■ The unquoted portion of § 301(b) merely affords a procedural remedy whereby a labor organization, representing employees in an industry affecting commerce, may sue and be sued as an *entity* in the federal courts. *Textile Workers v. Lincoln Mills, supra,* 353 U.S. at 451, 77 S.Ct. 912.

Defendants further urge that the holding of *Atkinson v. Sinclair Refining Co., supra,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, reinforces the legislative intent of § 301(b) to insulate individual union members from exposure to damage suits. In my judgment, defendants' reading of *Atkinson* is inapposite to the precise question addressed herein.

■ *Atkinson* involved an employer's action against the union and twenty-four individual employees for conducting a "wildcat" strike in violation of the no-strike clause in the collective bargaining agreement. The Supreme Court dismissed the count of the complaint directed at the individual union members for failure to state a claim upon which relief could be granted. The Court held:

The national labor policy requires and we hold that <u>when a union is liable for damages for violation of the no-strike clause</u>, its officers and members are not liable for these damages. Here, Count II, as we have said, necessarily alleges union liability but prays for damages from the union agents. <u>Where the union has inflicted the injury it alone must pay</u> (underscoring supplied).

370 U.S. at 249, 82 S.Ct. at 1325. *Atkinson,* in short, only stands for the proposition that where the union itself is responsible for unauthorized action, monetary damages for such action may not be visited upon the individual members. This holding accords

with the expressed legislative intent. *See* 93 Cong.Rec. 5014 (1947).

■ More importantly, *Atkinson* recognized that an employer's action against individual employees for violation of the collective bargaining agreement is within the scope of § 301. 370 U.S. at 246, 82 S.Ct. 1318. And, this fact was given tacit acknowledgment in *Smith v. Evening News Association, supra,* 371 U.S. at 199–200, 83 S.Ct. 267.

■ Simply stated, therefore, in my judgment, there is nothing sacrosanct in the language of § 301(b) or *Atkinson* which would serve to insulate individual employees from monetary liability in a proper § 301 suit. The Supreme Court, however, specifically reserved the question of whether a proper § 301(a) claim would be stated if wholly individual, unauthorized action were engaged in by the employee. 370 U.S. at 238 n.7, 82 S.Ct. 1318.

To date, there is a dearth of authority on the reserved question. In *Sinclair Oil Corp. v. Oil, Chemical & Atomic Workers,* 452 F.2d 49 (7th Cir. 1971), the complaint was framed to decide the question reserved in *Atkinson.* The Court reviewed the legislative history and concluded that the individual employees who had engaged in a "wildcat" strike without union authorization could not be held liable for damages under § 301. 452 F.2d at 54. The Court concluded that the primary remedy for the employer was discharge or discipline.

More recently, in *Alloy Cast Steel Co. v. United Steelworkers, etc.,* 429 F.Supp. 445, 451 (N.D.Ohio 1977), the District Judge held that the individual members may be financially accountable for the consequences of a "wildcat" strike conducted without union authorization or approval. This conclusion was premised in large measure upon language in *Hines v. Anchor Motor Freight, supra,* 424 U.S. at 562, 96 S.Ct. at 1055, wherein the Court stated:

> Section 301 contemplates suits <u>by and against individual employees</u> as well as between unions and employers . . . (underscoring supplied).

In the matter before me, the defendant employees' alleged breach of the terms of the collective bargaining agreement may be neither an unfair labor practice, 29 U.S.C. § 158; nor, protected concerted activity. 29 U.S.C. § 157. In any event, the absence of such behavior herein in my judgment is not significant to the purposes of a suit for money damages under § 301. It is certain, however, that given the facts presented herein, the usual employer remedies of discipline or discharge are non-existent.

What remains, is an employer whose rights under specific terms of a collective bargaining agreement have allegedly been violated by wholly individual breaches of the terms and conditions of the agreement by the individual defendants. To permit such conduct to fall outside of the scope of § 301, would, in effect, leave a gap in the uniform, federal enforcement of collective bargaining agreements which the courts are instructed to bridge with the degree of judicial inventiveness commensurate with the nature of the problem. The scope of § 301 has been enhanced through judicial interpretation in past circumstances; and, in my judgment, such inventiveness should be employed here as well.

■ Our precedents establish that the word "between" in § 301 refers to "contracts" and not to "suits"; consequently, there is no limitation in § 301 to include suits between unions and employers only. *Smith v. Evening News Association, supra,* 371 U.S. at 200, 83 S.Ct. 267. *See Hines v. Anchor Motor Freight, supra,* 424 U.S. at 562, 96 S.Ct. 1048; *Atkinson v. Sinclair Refining Co., supra,* 370 U.S. at 246, 82 S.Ct. 1318.

There is an important comment in *Evening News Association;* that is, individual employee rights and claims should not be excluded from the scope of § 301 because they often

> lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective

bargaining contract on which they are based.

371 U.S. at 200, 83 S.Ct. at 270.

In my judgment, it would thus be an anomaly not to consider specific employer rights arising directly from the terms of the collective bargaining agreement as entitled to a lesser degree of protection. To the extent that employees may violate terms of the collective bargaining agreement with impunity, such unrestrained, and here, irremediable conduct, may lead to reluctance to negotiate such provisions in future collective bargaining contexts.

In the context of the present litigation, it cannot be considered mere speculation that the plaintiff employer would be reluctant to negotiate the subject of educational leaves in future contracts. The particular provisions which are the subject of the instant breach are undoubtedly the *quid pro quo* sought by the employer in return for negotiating the employee leave provisions.

In the final analysis, however, this court rests its holding upon a broader concern embodied in § 301; that is, to establish a procedure for enforcing collective bargaining agreements by or against the parties that are bound by them. The rationale was succinctly stated in the Senate Report:

> Statutory recognition of the collective agreement as a valid, binding and enforceable contract is a logical and necessary step. It will promote a high degree of responsibility upon the parties to such agreements and will thereby promote industrial peace.

S.Rep.No.105, 80th Cong., 1st Sess., p. 17.

For the above reasons, defendants' individual motions to dismiss the complaint must be and hereby are denied. Defendants are further directed to file answers in each action within 20 days after notice of this decision. *See* Fed.R.Civ.P. 12(a).

It is so Ordered.