**COMPLETE AUTO TRANSIT, INC., F. J. Boutell Driveaway Company, Inc., Automobile Carriers, Inc., Plaintiffs-Appellants,**

v.

**Danny REIS, Larry Keller, Virgil Williams, John Sealey, John Lamb et al., Defendants-Appellees.**

No. 78–1053.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1978.

Decided Feb. 8, 1980.

R. Ian Hunter, C. John Holmquist, Jr., Matheson, Bieneman, Parr, Schuler & Ewald, Bloomfield Hills, Mich., for plaintiffs-appellants.

Hiram S. Grossman, Draper, Daniel, Ruhala & Seymour, Flint, Mich., James P. Hoffa, Detroit, Mich., for defendants-appellees.

Before WEICK, LIVELY and MERRITT, Circuit Judges.

LIVELY, Circuit Judge.

The first issue in this appeal requires the court to traverse the largely uncharted waters which lie between *Boys Markets, Inc. v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). The second issue relates to a question which the Supreme Court has never decided—whether an employer may recover damages from individual union members for alleged breaches of the no-strike provision of a collective bargaining agreement where the employer does not seek damages from the union.

## I.

Three employers brought nearly identical actions in the district court. The actions were consolidated for trial and a single judgment was entered. All employers appeal. The three plaintiffs are engaged in the transportation by truck of motor vehicles, two as common carriers and one as a contract carrier. All are signatories to an identical collective bargaining agreement which covers operations at their respective Flint, Michigan facilities. The defendants are drivers and other employees at the Flint facilities who are members of Teamsters Local Union No. 332. Teamsters 332 is signatory to the collective bargaining agreement with the three employers, and is the exclusive bargaining agent for all the defendants. The collective bargaining agreement contains a no-strike clause and a provision requiring that all disputes are subject to a grievance procedure which includes binding arbitration as its final step.

In June 1976 employees of the three plaintiffs went out on strike. The employers filed suit pursuant to § 301 of the Labor Management Relations Act, 1947 as amended, 29 U.S.C. § 185 (1976), seeking injunctions against the wildcat strikes. After consolidation, the district court denied injunctive relief upon a finding that the strikes were not over an arbitrable issue. *Boys Markets, supra; Plain Dealer v. Cleveland Typographical Union*, 520 F.2d 1220 (6th Cir. 1975), *cert. denied*, 428 U.S. 909, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976); *United States Steel Corp. v. Mine Workers*, 519 F.2d 1236 (5th Cir. 1975), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). This holding was based on the court's finding that the differences which led to the work stoppage were between the union members and their union, rather than between employers and employees. Specifically, the court found that the members claimed the union was not properly representing them in current negotiations for amendments to the collective bargaining agreement. The court also found that the strikes had not been authorized by the union. This decision was delivered orally on June 14, 1976 and an order denying plaintiffs' motions for preliminary injunctions was entered June 21, 1976. The findings of the district court and its denial of injunctive relief were affirmed by this court in an unpublished order entered February 28, 1978 (No. 76–2016).

Meanwhile, on June 16, 1976 the employers filed amended complaints in which they renewed their motion for injunctive relief. The amended complaints stated that Local 332 had offered to enter into an agreement with the employers by which the striking employees would return to work in exchange for assurances that no discipline, reprisals, penalties or fines would be imposed upon them. After a hearing at which the union agreed to forego disciplining the employees for the unauthorized strike if they would return to work immediately, the court concluded that the only unresolved issue was the workers' demand for amnesty from their employers. The court further found that this issue involved a dispute between the employers and employees over the terms of employment and was arbitrable. Concluding that the continuation of the work stoppage violated the no-strike clause of the collective bargaining agreement and that the traditional requirements for equitable relief were present, the district court enjoined the employees from engaging in the work stoppage and directed the employers to submit themselves to the

grievance procedures of the agreement, including arbitration, should any discipline be imposed and grievances taken. The preliminary injunction was issued on June 21, 1976. The injunction was directed to the individual defendants "and other members and persons represented by Local Union No. 332 who are employed by the plaintiff[s] . . . ." No appeal was taken from this order.

On March 25, 1977 the defendants moved the court for dismissal of the consolidated actions. In their motion the defendants stated that all striking employees of the three plaintiffs had returned to work on June 21, 1976 and had continuously remained at work since that time. It was asserted that this fact rendered the case moot as to the issue of continuation of the strike. The motion stated that the only other issue in the case—the demand for damages from individual employers—did not present a valid claim for relief. The plaintiffs responded that the defendants had returned to work in obedience to the court order of June 21, 1976 and had continued to work, but denied that the issues in the case were moot or that they were precluded from recovering damages from individual employees for breach of the no-strike provision of the collective bargaining agreement.

The plaintiffs appeal from the final judgment of the district court dismissing all claims. In two memorandum opinions and orders the district court concluded that *Buffalo Forge, supra,* had substantially narrowed the *Boys Markets* exception to the prohibition against injunctions in labor disputes contained in § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104 (1976). The court found that the work stoppage in the present case was "precipitated by an intra-union dispute," which was not arbitrable. Though this dispute was soon resolved, the work stoppage continued over a dispute which was arbitrable, the issue of amnesty for the strikers. The district court concluded that its June 21, 1976 injunction was proper when entered, but that *Buffalo Forge* permitted an injunction only if the issue over which the strike *began* was arbi-

trable and did not permit injunctive relief where an arbitrable issue was only the cause of continuation of the work stoppage. The court also determined that one of the congressional purposes behind enactment of § 301 of the Labor Act was to shield union members from liability and that this purpose would be undercut if monetary damages were recoverable by an employer from individual employees.

## II.

Despite the anti-injunction provision of the Norris-LaGuardia Act the Supreme Court held in *Boys Markets* that a federal court may enjoin a strike when certain conditions are met. These conditions were set forth in a passage, 398 U.S. at 254, 90 S.Ct. at 1594, where the Court quoted from the dissenting opinion in its earlier decision in *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962):

A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. 370 U.S. at 228, 82 S.Ct. at 1346. (Emphasis in original.)

The Supreme Court concluded that the strong congressional policy favoring settlement of industrial disputes by arbitration would be frustrated if employers were not permitted to enjoin a strike over an arbitrable issue where the strike violates a no-strike agreement. Since a no-strike obligation, either express or implied, is the *quid pro quo* for an employer's agreement to submit labor disputes to arbitration, the incentive for such agreements would be lacking if the "most expeditious method by which the no-strike obligation can be enforced is eliminated." 398 U.S. at 248, 90 S.Ct. at 1591. The Court stated that *Boys Markets* marked a return to its pattern of upholding the national policy favoring arbitration as exemplified in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and the *Steelworkers Trilogy.*[1]

We turn now to *Buffalo Forge* which involved a classic sympathy strike. Members of a union who had no dispute with their employer refused to cross the picket lines of a sister union which was engaged in a strike against the same employer following failure to negotiate a collective bargaining agreement. The union of the sympathy strikers did have an existing collective bargaining agreement with the employer. This agreement contained a no-strike clause and a provision for compulsory binding arbitration. The Supreme Court affirmed denial of the employer's request for an injunction to halt the sympathy strike upon a finding that "*Boys Markets* plainly does not control this case." 428 U.S. at 407, 96 S.Ct. at 3147. The question whether the sympathy strike was legal under the agreement was subject to arbitration, the Court held. The employer could obtain a court order requiring the union to arbitrate this issue if it refused to do so on demand. Further, if the strike were held illegal by an arbitrator the federal statutes would permit issuance of an injunction to enforce the arbitral decision. However, since the sympathy strike

was not *over* any dispute subject to the arbitration provisions of the agreement the employer was not entitled to enjoin it.

The Court reasoned that *Boys Markets* was designed solely to further the national policy favoring settlement of labor disputes by means agreed upon by the parties. This policy favoring arbitration was not in peril in *Buffalo Forge* because neither the causes nor the issues underlying the sympathy strike were subject to the grievance and arbitration procedures agreed to by the parties. 428 U.S. at 407–8, 96 S.Ct. at 3148. *Buffalo Forge* emphasizes that the mere fact that a strike may be illegal is not sufficient to empower a federal court to enjoin it. Norris-LaGuardia withholds jurisdiction to grant an injunction unless the case comes within the "narrow" exception established in *Boys Markets. Id.* at 402–3, 96 S.Ct. at 3145. Further, the fact that the legality of a strike may itself present an arbitrable question does not empower a federal court to enjoin the strike. Only if the underlying dispute—the one "over" which the workers are striking—is arbitrable, will the *Boys Markets* exception permit a federal court to enjoin a strike.

The novelty of the present case lies in the fact that a work stoppage which began over a dispute which was not subject to arbitration was continued because of a dispute which was arbitrable. The district court based its decision on the fact that the work stoppage was "precipitated by" a non-arbitrable dispute. Support for this conclusion is found in the language of *Buffalo Forge* where the Court said *Boys Markets* would have permitted an injunction against the strike "had the strike been precipitated by a dispute between union and management that was subject to binding arbitration under the provisions of the contracts." *Id.* at 406, 96 S.Ct. at 3147.

■ The employers point out that the nature and purpose of the work stoppage in

---

1. *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

the present case changed after the strike began. The district court made a finding that the intra-union dispute had been settled and the work stoppage continued only because of the dispute over a demand that the employers grant amnesty to the strikers. The employers contend that the district court should have considered what the strike was "over" at the time of its decision rather than what "precipitated" it in the first place. We agree.

In cases since *Boys Markets* this court has consistently permitted injunctions against strikes only where the strikes are "over" arbitrable disputes or grievances. *See Plain Dealer v. Cleveland Typographical Union,* supra; *Southern Ohio Coal Co. v. Mine Workers,* 551 F.2d 695 (6th Cir.), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 155 (1977); *United States v. Cunningham,* 599 F.2d 120 (6th Cir. 1979). In none of these cases did the cause of the work stoppage change from a non-arbitrable dispute to an arbitrable one. We believe the district court placed too much emphasis on the precipitating cause from which the strikes in the present case originated. There is no doubt that so long as the employees refused to work because of dissatisfaction with the representation given by their union, the strike was not enjoinable. However, the district court found that dispute was resolved. When the defendants continued to strike beyond the time when their intra-union dispute ended, the strike was "over" a different issue— their demand that no discipline be imposed for their participation in the strike. All parties agree that this issue was arbitrable. The only purpose of the strike at the time the employers renewed their motion for preliminary injunction on June 16, 1976 was to compel the employers to agree to forego disciplining the strikers.

We do not believe *Buffalo Forge* required the district court to dissolve the preliminary injunction. The arbitrable issue remaining in the case was much more than the legality of the strike itself, an issue which *Buffalo Forge* held not sufficient to permit an injunction. Here there had been a transformation of the strike so that its underlying

cause had become an arbitrable dispute. At this point the matter came within the ambit of *Boys Markets.* The construction of *Buffalo Forge* adopted in *Cedar Coal Co. v. Mine Workers,* 560 F.2d 1153 (4th Cir.), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1977), appears logical and correct. Under that construction *Boys Markets* does not apply to permit an injunction where the only dispute between a company and a union is over the meaning or application of a no-strike provision, and this dispute has been precipitated by a strike over a non-arbitrable issue. However, if the underlying cause of the strike is a disagreement over an arbitrable issue, and its object or purpose is to compel the employer to concede on the arbitrable issue, the strike may be enjoined provided other equitable requirements are satisfied. *Id.* at 1170; *see also Napa Pittsburgh, Inc. v. Automotive Chauffeurs Union,* 502 F.2d 321, 324–33 (3d Cir.), *cert. denied,* 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974) (Hunter, J., dissenting). This construction is logical because in such a case the strikers are seeking to avoid the agreement for arbitration, and to deny an injunction would deprive the employer of its most expeditious and effective remedy. *Boys Markets,* supra, 398 U.S. at 248–49, 90 S.Ct. at 1591.

### III.

▐ Included in the prayer for relief in the amended complaint filed by each plaintiff was the following demand:

5. That the Court award damages against the Defendants, in their individual capacity, for all losses arising out of the unlawful work stoppage and for attorney fees.

Damages were not sought from Local 332. Thus the question for decision is whether individual members of a union may be sued for damages under § 301 of the Labor Management Relations Act for violation of the no-strike provision of a collective bargaining agreement where there is no attempt to recover from the union.

Section 301 of the Labor Act does not deal directly with this question. It provides that a labor organization is bound by the acts of its agents, but states specifically that a money judgment against a labor organization "shall not be enforceable against any individual member or his assets." § 301(b). There is no reference to money judgments against individual union members. In *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court held that a complaint which necessarily alleges union liability but seeks damages only from union agents does not state a claim for relief under § 301. The Court did not "reach the question of whether the count would state a proper § 301(a) claim if it charged unauthorized, individual action." *Id.* at 249, n. 7, 82 S.Ct. at 1325, n. 7. In the present case the plaintiffs pled that the strikes were without union authorization or approval.

In *Sinclair Oil Corp. v. Oil, Chemical & Atomic Workers*, 452 F.2d 49 (7th Cir. 1971), the court dealt directly with the question before us. It concluded that § 301 does not permit an employer to recover damages from individual union members for violation of an agreement not to strike. This conclusion was based on a careful consideration of the legislative history of § 301. Though one purpose of the 1947 Labor Act was to promote labor peace by making unions responsible for their actions, there appears to be no corresponding purpose to make individual members liable in money damages for unauthorized breaches of a no-strike agreement. The remedy against individual members is discipline, or even discharge. But the specter of the "Danbury Hatters"[2] decisions still haunted the minds of the lawmakers. *See* statement of Senator Taft, "We do not want to perpetuate such a condition," 92 Cong.Rec. 5705(1946); statement of Senator Ball, also a sponsor of the Act, "by providing that the union may sue and be sued as a legal entity for a violation of contract, and that liability

for damages will lie against union assets only, [§ 301] will prevent a repetition of the Danbury Hatters case in which many members lost their homes because of a judgment rendered against the union which also ran against individual members of the union." 93 Cong.Rec. 5014 (1947).

After discussing the legislative history of § 301 the *Sinclair Oil* court stated its conclusion as follows:

Congress was well aware of the problems involved in reaching and enforcing no-strike agreements, and we think that when Section 301 was enacted it had no intention of subjecting union members engaged in wildcat strikes to individual liability for damages. We conclude that the primary remedy of Sinclair is discharge or discipline of individual defendants. 452 F.2d at 54 (citations and footnote omitted).

The employers in the present case rely primarily upon a few district court cases which have taken a contrary view. *New York State United Teachers v. Thompson*, 459 F.Supp. 677 (N.D.N.Y.1978), did not involve breach of a no-strike agreement. Further, the employees who were sued had not acted collectively. It was claimed that two employees had violated the collective bargaining agreement by failing to remain employed for a given period after receiving extended educational leaves of absence. Since the employees had resigned, the district court found that "the usual employer remedies of discipline or discharge are nonexistent." 459 F.Supp. at 683. The case is distinguishable on several grounds from the present case where the employees acted in concert, contrary to the provisions of the no-strike clause, and remained employees, subject to discipline.

The district court in *Alloy Cast Steel Corp. v. United Steel Workers*, 429 F.Supp. 445, 451 (N.D. Ohio 1977), held that where "there is no actionable violation by the unions, the Court is not foreclosed from hear-

**2.** *See Loewe v. Lawlor*, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1908); *Lawlor v. Loewe*, 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341 (1915), and *Loewe v. Savings Bank of Danbury*, 236 F. 444

(2d Cir. 1916), *aff'd*, 242 U.S. 357, 37 S.Ct. 172, 61 L.Ed. 360 (1917), in which judgment against individual union members resulted in levies on the homes of some members.

ing and deciding whether the individual members violated the contract." In support of this conclusion the district court cited statements from two Supreme Court opinions.[3] We do not believe these statements compel the conclusion reached by the courts in *Alloy Cast Steel, supra,* and *Maita v. Killeen,* 465 F.Supp. 471 (E.D.Pa.1979).

In *Smith v. Evening News Ass'n.,* the employee's suit was based on a claim of discrimination in job assignments. The trial court held that the claim, if true, would make out an unfair labor practice over which the National Labor Relations Board had exclusive jurisdiction. The issue before the Supreme Court was one of jurisdiction, not the separate question of whether § 301 created a cause of action. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The holding in *Smith v. Evening News* was that § 301 is not to be given a narrow interpretation to prevent an individual employee from suing his employer for damages for breach of a collective bargaining agreement. In *Hines v. Anchor Motor Freight,* the question was whether an action could be maintained by employees against their employer for breach of a collective bargaining agreement where an accompanying complaint against the union for breach of its duty of fair representation had withstood a motion for summary judgment. The breach claimed by the plaintiffs was discharge from employment. In holding that it was error to dismiss the employees' action against the employer the Court stated, "Section 301 contemplates suits by and against individual employees as well as between union and employers  .  .  . . ." 424 U.S. at 562, 96 S.Ct. at 1055.

Neither of these statements by the Supreme Court in cases involving individual acts of alleged contract violations by employers is authority for holding that it was the intention of Congress in enacting § 301 to create a cause of action for damages against individual union members for breach of a no-strike agreement. We agree with the Seventh Circuit in *Sinclair Oil,*

*supra,* that the legislative history indicates that the contrary conclusion is required. Many district courts have agreed with the *Sinclair Oil* holding. *See Westinghouse Electric Corp. v. Electrical Workers,* 470 F.Supp. 1298, 1299 (W.D.Pa.1979), where such decisions are listed.

The judgment of the district court is affirmed in part and reversed in part. The cause is remanded to the district court to determine whether reinstatement of the injunction of June 21, 1976 is warranted under present circumstances. No costs allowed.

---

**3.** *Smith v. Evening News Ass'n.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Hines v.* *Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).