**PUTNAM FABRICATING COMPANY,**
Appellant,

v.

Roger NULL, James Persinger, James McClung, Larry Moore, Joseph Cox, Larry Beller, Steve Shouldis, Harry Flinner, Earl Cunningham, Danny McKean, Robert Cook, Floyd Tillis, Russell Spaulding, Edward Oldham, Aubrey Asbury, Shawn Sayer, Charles Hall, Appellees.

No. 79–1275.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 12, 1980.

Decided Sept. 26, 1980.

Sarah E. Smith, Ricklin Brown, Charleston, W. Va. (Bowles, McDavid, Graff &

Love, Charleston, W. Va., on brief), for appellant.

James M. Haviland, Charleston, W. Va. (James B. McIntyre, McIntyre, Haviland & Jordan, Charleston, W. Va., on brief), for appellees.

Before FIELD, Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.

FIELD, Senior Circuit Judge:

Presented for our determination in this case is the question whether an employer, pursuant to Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185,[1] may recover damages from individual union members for an unauthorized and unratified breach of the no–strike provision of a collective bargaining agreement. On June 8, 1977, the seventeen defendants, all members of Local Union 667, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (Union) and employees of Putnam Fabricating Company (Company), walked off the job in violation of the no–strike provision of the collective bargaining agreement between the Company and the Union. Since the work stoppage was neither authorized nor ratified by the Union, the defendants were discharged by the Company pursuant to the collective bargaining agreement.[2] Thereafter, a picket line was set up and the Company was shut down. In response, the Company filed suit in the district court against the employees, seeking both injunctive relief and damages. The district court issued a temporary restraining order but subsequently denied the Company's motion for a preliminary injunction. In addition, the court dismissed the Company's claim for damages and from this latter order the Company appeals. We affirm.

Although the question presented is one of first impression for us, both the Seventh and Sixth Circuits have had occasion to consider the issue.[3] In *Sinclair Oil Corp. v. Oil, Chemical and Atomic Workers International Union*, 452 F.2d 49 (7 Cir. 1971), the employer sought damages under Section 301 from individual employees who, in defiance of their union, refused to cross a picket line maintained by fellow union members of another bargaining unit. In dismissing the employer's claim, the Seventh Circuit looked to both the language and legislative history of Section 301. The court noted that Section 301(b) expressly prohibits enforcement against individual union members of judgments obtained against the union and that:

[t]he legislative history of the Act indicates that the principal concern of Con-

---

1. 29 U.S.C. § 185 reads, in pertinent part, as follows:

§ 185. *Suits by and against labor organizations*
*Venue, amount, and citizenship*

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments*

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and

in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

\* \* \* \* \* \*

*Determination of question of agency*

(e) For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

2. It is undisputed that the Union is without liability in regard to the work stoppage.

3. This issue was expressly reserved by the Supreme Court in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249, n.7, 82 S.Ct. 1318, 1325, 8 L.Ed.2d 462 (1962).

gress was with making unions, as parties to collective bargaining agreements, responsible for breaches of agreements and to avoid subjecting individual union members to fiscal ruin that was visited upon members as a result of the "Danbury Hatters" decision.[4]

452 F.2d at 52. Further, the court pointed out that the employer is not without remedy for it may discharge or discipline the individual union members who violate the collective bargaining agreement. The court concluded, therefore, that "when Section 301 was enacted [Congress] had no intention of subjecting union members engaged in wildcat strikes to individual liability for damages." 452 F.2d at 54.

The same conclusion was reached by the Sixth Circuit in *Complete Auto Transit, Inc. v. Reis*, 614 F.2d 1110 (6 Cir. 1980). In *Reis* the employer sought damages from individual employees who had gone on strike claiming their union was not representing them properly in current negotiations. Agreeing with the Seventh Circuit, the court concluded that there is no indication that Congress intended to create a cause of action for damages against individual union members for breach of a no–strike agreement. 614 F.2d at 1116.

We, too, find the Seventh Circuit's analysis in *Sinclair Oil* persuasive. In passing Section 301(b) Congress was obviously concerned with the "fiscal ruin visited upon [union] members as a result of the 'Danbury Hatters' decision." *Sinclair Oil v. Oil, Chemical and Atomic Workers Union*, 452

F.2d 40, 52 (7 Cir. 1971). In the light of such Congressional concern, it would be anomalous to extend Section 301 to permit damage suits by employers against individual union members for breaches of a collective bargaining agreement.[5] There is simply no authority in the legislative history for a contrary conclusion. Finally, we are influenced by the fact that in some nine years since the Seventh Circuit decided *Sinclair Oil*, Congress has not seen fit to take any action to alter the result in that case. Accordingly, we hold that Section 301 does not create a cause of action for damages by an employer against individual union members for such an unauthorized breach of the collective bargaining agreement.[6]

*AFFIRMED*

---

4. In the "Danbury Hatters" decision (*Loewe v. Lawlor*, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1907); *Lawlor v. Loewe*, 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341 (1915); *Loewe v. Bank of Danbury*, 236 F. 444 (2 Cir. 1916)), a large money judgment was entered against several union members individually in an antitrust action and their personal assets were used to satisfy the judgment resulting in financial ruin for many.

5. As noted in *Sinclair Oil*, 452 F.2d at 52, Congress was apparently interested in making unions responsible for breaches of collective bargaining agreements. For example, Section 301(b) mandates that unions will be bound by the acts of their agents and under Section 301(e) in determining whether a person is act-

ing as an "agent" the question of whether the specific acts performed were actually authorized or subsequently ratified is not controlling. This is somewhat indicative that Congress was trying to insulate the individual union members and hold the union responsible.

6. We recognize that some district courts have reached a contrary conclusion. *E. g. New York State United Teachers v. Thompson*, 459 F.Supp. 677 (N.D.N.Y.1978); *Alloy Cast Steel Corp. v. United Steel Workers*, 429 F.Supp. 445 (N.D.Ohio 1977). However, we do not find them persuasive. *See Complete Auto Transit, Inc. v. Reis*, 614 F.2d 1110, 1115–16 (6 Cir. 1980).