**JOHN MORRELL & CO., Plaintiff,**

v.

**LOCAL UNION 304A OF the UNITED FOOD AND COMMERCIAL WORKERS, AFL–CIO AND CLC; and United Food and Commercial Workers International Union, AFL–CIO and CLC; Dennis Foster, Individually and in his capacity as president of Defendant Local 304A; James R. Lyons, Individually and in his capacity as Business Representative and Corresponding Secretary of Defendant Local 304A; and John Doe and Other Persons Unknown, Defendants.**

**No. Civ. 86–4135.**

United States District Court,
D. South Dakota, S.D.

Aug. 29, 1986.

Boyce, Murphy, McDowell & Greenfield by Jeremiah D. Murphy and James E. McMahon, Sioux Falls, S.D., and Sidley & Austin by Lawrence I. Kipperman, Chicago, Ill., for plaintiff.

David V. Vrooman, Sioux Falls, S.D., and Jacobs, Burns, Sugarman & Orlove by Robert S. Bates, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NICHOL, Senior District Judge.

The plaintiff, John Morrell & Co. (Morrell), is a corporation engaged in the meat processing business, an industry affecting commerce within the meaning of the Labor-Management Relations Act section 301(a), 29 U.S.C. section 185(a), and the National Labor Relations Act (NLRA) section 2, as amended, 29 U.S.C. section 152. The defendants, Local 304A of the United Food and Commercial Workers Union (UFCW), AFL–CIO (Local 304A), and UFCW International Union, AFL–CIO, (International), are unincorporated associations and labor organizations within the meaning of the NLRA Section 2(5), 29 U.S.C. section 152(5). Morrell and Local 304A and the International are parties to a collective bargaining agreement with a term from November 20, 1985, through November 19, 1988. The plaintiff brought this action pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. section 185, seeking preliminary injunctive relief against further work stoppages by the defendants in violation of this collective bargaining agreement. For the reasons hereinafter stated, the plaintiff's motion for a preliminary injunction is granted conditioned upon the employer submitting both grievances to arbitration. *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970).

## FACTS

The collective bargaining agreement between Morrell and Local 304A and the International contains the following no-strike clause:

5. Provisions having been made by this Agreement and local agreements for the peaceful and orderly settlement of any disputes which may arise between Company and the Union or local Unions or any Employee or Employees, it is agreed that during the term of this Agreement there shall be no strike, stoppage, slowdown, or suspension of work on the part of the union or any local Union or any Union member or lockout on the part of the Company on account of such disputes until after an earnest effort shall be made to settle all such matters in the manner provided in the respective agreements.

Mandatory grievance and arbitration provisions are also contained in the agreement and are all specifically referred to in this no-strike clause ("the manner provided in the respective agreements").

Morrell's also has a meat processing facility located in Arkansas City, Kansas

(Ark City). This facility's bargaining representative with Morrell is Local 340 of the UFCW, along with International. Any collective bargaining agreement between Morrell and the Ark City facility is separate and distinct from that between Morrell and Local 304A in Sioux Falls. The labor contract at the Ark City plant expired July 1, 1986, and when negotiations were unsuccessful between Local 340 and Morrell, Local 340 went out on strike. The legality of this strike is not at issue here.

On August 4, 1986, a number of the members of Local 340 set up a picket line in front of the Sioux Falls Morrell plant. With insignificant exception, Local 304A and the employees at the Sioux Falls plant whom Local 304A represent honored this picket line. At this time, Local 304A, as testified to by its president Dennis Foster, had no grievance with the plaintiff. The picket line was honored to show support for Local 340 workers.

Morrell immediately sought a temporary restraining order and injunctive relief to end this work stoppage. Before any court addressed this issue, however, Local 304A, by and through its business representative Jim Lyons, made an unconditional offer to return to work.

On August 8, 1986, Local 304A filed a grievance pursuant to the collective bargaining agreement, claiming a violation of Article II, Section 5, the no-strike provision, of the agreement. The union claimed that the contractual agreement permitted Local 304A members to honor picket lines without being subject to discipline or discharge. This grievance was filed in response to action taken by Morrell against employees who had refused to cross the picket line; the employees' personnel records were noted with an unexcused absence from work on that date.

Despite the unconditional offer to return to work and with the grievance pending, the workers again refused to cross a second picket line established at the Sioux Falls plant by Local 340 on August 15, 1986. When this second work stoppage occurred, Morrell sought and obtained a Temporary Restraining Order (TRO), issued August 15, 1986, restraining the members of Local 304A from further work stoppages. Local 304A, by and through its president Dennis Foster, again, on August 15, 1986, made an unconditional offer to return to work.

## ISSUE

The issue presented to the court was whether injunctive relief could be granted pending arbitration of the dispute between Morrell and Local 304A and the International under *Boys Markets, Inc. v. Retail Clerk's Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

In *Boys Markets*, the Supreme Court determined that an exception to the general anti-injunction rule of the Norris-LaGuardia Act, 29 U.S.C. section 104, is that an injunction could be granted where an employer sought to enforce the union's contractual obligation to arbitrate grievances rather than strike over them. *Boys Markets*, 398 U.S. at 249–253, 90 S.Ct. at 1591–1594. This narrow exception was further clarified in *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). In *Buffalo Forge*, the Court held that the *Boys Markets* exception does not apply when *"only* the question whether the strike violates the no-strike pledge, and not the dispute that precipitated the strike, is arbitrable under the parties collective bargaining agreement" *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n.*, 457 U.S. 702, 708–709, 102 S.Ct. 2672, 2678, 73 L.Ed.2d 327 (1982).

*Buffalo Forge* at first blush would appear to be dispositive of the issue before this Court. The factual situation addressed in *Buffalo Forge* was a pure sympathy strike, wherein members of one union with no dispute with their employer, honored the picket line of a separate bargaining unit who in fact had a dispute with the same employer. *Buffalo Forge*, 398 U.S. at 399–404, 96 S.Ct. at 3143–3146. Since there was in fact no dispute between the union honoring the picket line and the

employer, the sympathy strike was not *over* an arbitrable grievance and thus not subject to the *Boys Markets* exception. *Id.* at 404, 96 S.Ct. at 3146. The Court did not disagree that the issue of whether the sympathy strike violated the no-strike provision of the collective bargaining agreement was itself arbitrable. *Id.* at 405, 410, 96 S.Ct. at 3146, 3149. However, since there was *no underlying dispute* between the union and employer, no injunctive relief pending arbitration was justified, thus *Boys Markets* did not control the case. *Id.* at 407, 96 S.Ct at 3147.

This reasoning of *Buffalo Forge* was reaffirmed in the subsequent case of *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n.*, 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982). The dispute at issue in *Jacksonville* was whether the refusal by the union, in protest of the Soviet invasion of Afghanistan, to handle cargo bound to or coming from the Soviet Union violated the collective bargaining agreement between the parties. The employer sought injunctive relief pending arbitration of this dispute.

Both *Buffalo Forge* and *Jacksonville* addressed a work stoppage that occurred, not in response to any specific dispute between the union and the employer, but rather, was in response to some other distinct controversy, *i.e.*, another union's strike and the Soviet invasion of Afghanistan. This is similar to what occurred on August 4, 1986, in the case at bar. Local 304A, at that time, had no separate arbitrable dispute with the plaintiff. Local 304A simply honored the picket line established by Local 340 and thus squarely came within the *Buffalo Forge* rationale. Injunctive relief at that point would have been improper.

However, the union *unconditionally* agreed to return to work before the Court could even address the question of injunctive relief. This *unconditional offer* was accepted by the company and became a part of the ongoing collective bargaining agreement. Local 304A, four days later, filed a grievance against Morrell charging that the employer's action in disciplining

employees who failed to work on the day of the sympathy strike violated the no-strike provision of the collective bargaining agreement. The union, by filing this grievance, has recognized the arbitrability of this dispute between itself and the plaintiff. Yet one week later, on August 15, Local 304A again participated in a work stoppage under the guise of a "sympathy strike" for Local 340.

It is this subsequent work stoppage, after an unconditional offer to return to work following a grievance submitted by the Union, that distinguishes this case from both *Buffalo Forge* and *Jacksonville*. The original work stoppage, which began as a sympathy strike over a nonarbitrable dispute, has now been transformed into a dispute over an arbitrable issue, *i.e.*, the right under the collective bargaining agreement to discipline these workers. The Sixth Circuit has in fact addressed this "transformation" concept in *Complete Auto Transit, Inc. v. Reis*, 614 F.2d 1110 (6th Cir.1980), *aff'd on other grounds*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981). The Supreme Court, however, has not addressed the validity of this transformation analysis. *Jacksonville Bulk Terminals*, 457 U.S. at 723 n. 22, 102 S.Ct. at 2686 n. 22, citing *Complete Auto Transit*, 451 U.S. at 401 n. 4, 101 S.Ct. at 1839 n. 4.

In *Complete Auto* there was a work stoppage based upon an intra-union dispute. This stoppage was not enjoinable under *Buffalo Forge* because there was no underlying arbitrable dispute between the employer and union. After the intra-union dispute was settled, the work stoppage continued when a question arose over the amnesty the workers were to be given by the employer. This question of discipline was a dispute between the employer and union and was over the terms of employment and thus arbitrable under the collective bargaining agreement. The Sixth Circuit noted that the focus in determining the propriety of injunctive relief should be on what the strike was *over* at the *time* of the *decision,* not what *precipitated* it in the

first place. *Complete Auto*, 614 F.2d at 1110, 1114. This Court agrees.

The situation at bar, as supported by evidence, is such that the second work stoppage occurred after a grievance had been filed concerning the discipline of workers and after an unconditional offer to return to work has been accepted by the employer. Any subsequent stoppage, even if under the guise of sympathy strike, was transformed into a dispute over these underlying arbitrable issues and is enjoinable under the *Boys Markets* exception.[1] And further, resolution of the discipline grievance pending before the arbitrator will in fact resolve both the issue of the validity of a sympathy strike under the terms of the collective bargaining agreement as well as the discipline issue.

In addition to finding that an underlying dispute is arbitrable under the terms of the collective bargaining agreement, the court must also consider whether the ordinary principles of equity warrant the issuance of injunctive relief. *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. In order to determine the equity of such relief, the court must consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict; (3) the probability of the movant's success on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

Testimony was presented to the court as to both the competitive nature of the meat processing industry and the fungible nature of the industry's product. When orders are unable to be filled, customers in a competitive market are forced to go elsewhere. Often this can result in a permanent loss of this customer, especially when the inability to fill orders is repetitive and sporadic. Suppliers are also affected when the company is unable to accept delivery and keep its commitment as to the number of animals needed. All of these, customer loss, perishable nature of the product, and loss of suppliers, risks irreparable harm to the goodwill of the company. *See, Ferry-Morse Seed Co. v. Food Corn, Inc.,* 729 F.2d 589, 592 (8th Cir.1983).

The balance of harm in the case at bar falls on the side of Morrell. As noted above, the potential loss of goodwill, customers, suppliers, etc., is great. Local 304A and the International have not demonstrated what harm, if any, would result to the union if an injunction, conditioned on submission of the issues to arbitration, is granted. Such an injunction may, in effect, protect the job security of the defendant union members.

There is a broad no-strike provision contained in the current collective bargaining agreement between the parties. There was also evidence as to certain provisions that Local 304A and the International submitted during the negotiations of the present agreement. These proposed provisions specifically allowed the members of Local 304A to honor picket lines established at the Morrell facility without discipline or discharge. This provision was *not* incorporated into the collective bargaining agreement signed by both parties. Such evidence supports the probability of success on the merits for Morrell on both the issue of discipline and the legality of a sympathy strike.

Lastly, the Court in *Boys Markets* found in favor of allowing injunctive relief when the underlying dispute was present in order to further the congressional policy of favoring peaceful resolution of labor disputes. *Boys Markets*, 398 U.S. at 253, 90 S.Ct. at 1593. Undoubtedly peaceful resolution of the dispute in question is in the public interest.

Having found that, at the time of this decision, there is in fact an arbitrable dis-

---

1. This Court is not unmindful of the Eighth Circuit decision of *Valmac Industries, Inc. v. Food Handlers Local 425,* 519 F.2d 263 (8th Cir.1975), *cert. granted, vacated and remanded,* 428 U.S. 906, 96 S.Ct 3215, 49 L.Ed.2d 1213 (1976), but feels that the facts in the case at bar are distinguishable from *Valmac* and are much more in line with *Complete Auto,* and accordingly holds with the Sixth Circuit.

808

pute between Local 304A and Morrell which precipitated a second work stoppage on August 15, 1986, even though under the guise of another sympathy strike, and finding that the principles of equity favor the granting of injunctive relief,

THEREFORE, IT IS ORDERED:

That the plaintiff's motion for a preliminary injunction is granted, conditioned upon the employer (Morrell) submitting to arbitration. This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to F.R. C.P. 52(a).