430 F.Supp. 205 (1977)
PEABODY COAL COMPANY, Plaintiff,
v.
INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Defendant.
No. 76-802C(3).
United States District Court, E. D. Missouri, E. D.
April 21, 1977.
Alan C. Kohn and Harold I. Elbert, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for plaintiff.
Harrison Combs and Willard P. Owens, Washington, D. C., Ward Fickie, Biggs, Curtis, Casserly & Barnes, Clayton, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
In this action plaintiff seeks to require the United Mine Workers of America (the International) to exert its influence to limit unauthorized or "wildcat" strikes by local unions. The action is based upon an alleged contractual duty on the part of the International to maintain "the integrity of the contract". Defendant has moved to dismiss the action on two theories[1], one procedural and the other substantive. The motion was first filed some months ago and considered and denied by the Court. It was extensively re-briefed after the Supreme Court's decision in Buffalo Forge Co. v. United Steel-workers of America, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), and the Court *206 has since heard oral argument on the question.
Some factual background is necessary to consider the legal issues presented. Plaintiff is a Delaware corporation with its principal place of business in Missouri. Defendant is an unincorporated labor organization representing employees in industries that affect commerce within the meaning of 29 U.S.C. § 152(5) and (7). The U.M.W. consists of an international, districts, and various local unions spread throughout the United States. The International is the bargaining agent for the various districts and locals and is the only signatory to national collective bargaining agreements. The locals exercise a certain degree of autonomy from the International. The rights, liabilities and enforcement procedures between the various union entities are defined for the most part by a constitution.
On December 5, 1974, plaintiff and the International entered into a national contract. This contract set out the procedures to be followed in the event an arbitrable dispute arose (the "grievance procedure"). This clause basically stated that arbitrable disputes were to be settled through full and binding arbitration and not by resorting to the courts. Another clause in the national contract obligated both parties to maintain the integrity of the contract and reaffirmed their joint commitment to settle all disputes through the grievance procedure. Since the signing of the contract there has been substantial labor unrest at mines represented by the U.M.W. and operated by Peabody.
Peabody alleges that the defendant has breached the contract by encouraging strikes at various mines and not submitting arbitrable grievances to binding arbitration. Plaintiff seeks specific performance of the contract, injunctive relief, damages, and asks further that the Court compel defendant the International to instruct the various districts and locals to comply with the grievance procedures as set out in the national contract. Plaintiff also asks the Court to compel the International to suspend the autonomy of any locals refusing to comply. The International has the power of suspension in the union constitution.
Defendant argues that this action must be dismissed for failure to join indispensable parties under Rule 19(b) of the Federal Rules of Civil Procedure. The defendant contends that any attempt by this Court to compel the International to discipline the districts or locals is necessarily a judicial interpretation of the rights of the International against the locals, and the liabilities of the locals towards the International. From this premise, the respondent argues that the locals will be directly affected by any relief granted by this Court and are thus indispensable parties to this litigation.
Rule 19(a) discusses parties to be joined if feasible if:
(1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
Since many of the locals and districts that defendant seeks to join are outside the jurisdiction of this Court, it is not possible to join them. However, Rule 19(b) provides that a court may proceed without these parties "in equity and good conscience" after making four considerations. The factors to be considered are: (1) the plaintiff's interest in having a forum; (2) the protection of the outsider (as a practical matter any prejudice to either the outsider or parties present that could result from a judicial decree); (3) the adequacy of the relief granted without the outsider; and (4) the feasibility of shaping a judicial decree which avoids or lessens prejudice to both those present and absent.
The Supreme Court in Provident Bank v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) indicated that in deciding *207 a Rule 19(b) motion the Court should answer the following question in the affirmative before proceeding without the absent party:
Can the decree be written so as to protect the legitimate interests of the outsiders and, if so, would such a decree be adequate to the plaintiff's needs and an efficient use of judicial machinery? 390 U.S. at 112, n. 10, 88 S.Ct. at 739.
Only one of these factors, in the Court's opinion, presents a real problem under Rule 19(b). That factor is the interest of the locals and districts in a decree that would affect the International's treatment of them. Their rights and responsibilities with respect to the defendant are defined, as stated before, in the U.M.W. constitution. Defendant has raised the possibility that this Court's final judgment could well affect rights under that constitution. The presence of this problem could well make drafting an injunction granting any specific relief impossible.
That possibility is not fatal to this action, however. Plaintiff has requested damages for defendant's alleged contractual breach. The Court could decide that a breach occurred and award damages without affecting locals or districts in any way.[2] The question of injunctive relief may remain open at this time.
In sum, the Court feels that it can adequately decide the issues presented without prejudice to either the parties present or those absent. The Court also feels that it can grant relief which will be adequate to the plaintiff's needs without prejudicing the rights of the various districts and locals.[3]
Defendant urges that Buffalo Forge Co. v. United Steelworkers of America, supra, precludes recovery for several of the strikes pleaded in plaintiff's complaint. Briefly stated, Buffalo Forge held that to be enjoinable a strike must be caused by (or "over") an arbitrable dispute. This is because it is the policy favoring arbitration and not a no-strike clause in the union contract that allows an injunction in face of the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104 (1970). Boys Market, Inc. v. Retail Clerks' Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
When a strike is caused by stranger pickets or is a so-called sympathy strike, it is not within the Boys Market exception.[4] The corollary of this conclusion is that sympathy strikes are not in violation of any implied no-strike clause because they do not violate any duty to arbitrate. Thus, there can be no action for damages (absent an express no-strike clause) for such strikes.[5]United States Steel Corp. v. U.M.W., 548 F.2d 67 (3rd Cir. 1976).
Thus, plaintiff's claims for damages arising from such strikes must be dismissed. Because of the size of the complaint in this action (70 paragraphs and 49 pages) the Court will not order specific portions of the complaint to be dismissed. Plaintiff will be ordered to submit an amended complaint (or a list designating those paragraphs of the complaint to be deleted). Defendant *208 may then respond if it feels that some strikes excluded by Buffalo Forge are still claimed in the complaint.
NOTES
[1] To the extent that defendant has raised other issues in its motions to dismiss, they are considered by the Court to be without merit.
[2] This is particularly true in light of the fact that plaintiff has alleged that the International has used no efforts whatsoever to enforce the integrity of the contract. Although their powers may be limited, they surely have some powers under the constitution.
[3] The defendant contends that the petitioner should file this suit in three or four different district courts, thus assuring it of jurisdiction over all parties whose rights may be affected. This Court disagrees. Some district courts might hold the International liable under the contract while others would not. The Court also notes that if the plaintiff is not allowed a forum in this Court, it is doubtful that there is any alternative available and thus plaintiff would be without any remedy at all.
[4] The question of why the employees are actually striking and thus whether the strike violates the contract may itself be arbitrable. But to be enjoined the strike must be "over" an arbitrable issue, not create one itself.
[5] This statement does not extend the strikes caused by stranger pickets from other U.M.W.-Peabody Mines. The Court will not foreclose at this time the argument that damages from those strikes were caused by strikes "over" arbitrable issues within the meaning of Buffalo Forge.