804 F.2d 457
 123 L.R.R.M. (BNA) 3084, 105 Lab.Cas. P 12,095
 JOHN MORRELL & COMPANY, Appellee,
v.
LOCAL UNION 304A Of the UNITED FOOD AND COMMERCIAL WORKERS,
AFL-CIO; United Food and Commercial Workers
International Union, AFL-CIO and CLC,
Appellants.
Dennis Foster, individually and in his capacity as president
of defendant Local 304A; James R. Lyons, individually and
in his capacity as Business Representative and Corresponding
Secretary of defendant Local 304A; John Doe and Other
Persons Unknown.
 No. 86-5364.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 17, 1986.
Decided Oct. 30, 1986.
 
 Robert S. Bates, Jr., Chicago, Ill., for appellants.
 Lawrence I. Kipperman, Chicago, Ill., for appellee.
 Before LAY, Chief Judge, and FAGG and BOWMAN Circuit Judges.
 PER CURIAM.
 
 
 1
 Local Union 304A of the United Food and Commercial Workers, AFL-CIO (Local 304A) appeals the district court's[1] grant of John Morrell & Company's motion for a preliminary injunction. We reverse.
 
 
 2
 John Morrell & Co. (Morrell) is a meat processing business with facilities in Sioux Falls, South Dakota and Arkansas City, Kansas (Ark City). Local 304A, an affiliate of the United Food and Commercial Workers International Union, AFL-CIO and CLC, represents employees at the Sioux Falls plant and negotiates collective bargaining agreements with Morrell on behalf of those employees. Local 340, a different local of the same international, represents and negotiates with Morrell on behalf of employees at the Ark City facility. Neither local is a party to the other local's contract with Morrell.
 
 
 3
 When Local 340's contract with Morrell expired on July 1, 1986, its members struck at the Ark City plant to exert pressure on Morrell to negotiate a new collective bargaining agreement. On two separate occasions, August 4 and August 15, 1986, members of Local 340 also set up picket lines at the Sioux Falls facility. Local 340's business agent testified on cross-examination at the hearing on the preliminary injunction that Local 340's expectation was that if the Sioux Falls employees honored the picket lines, more pressure would be exerted on Morrell to negotiate favorably with the Ark City employees. On both dates, all but one to two percent of the Sioux Falls employees represented by Local 304A refused to cross Local 340's picket lines. While it appears that some officers of Local 304A spoke with Local 340 picketers, no evidence in the record indicates that any member of Local 304A carried picket signs or placards or engaged in any strike activity other than refusing to cross the picket line. The president of Local 304A testified before the district court that his intent as a member of Local 304A in refusing to cross Local 340's picket line was to show support for Local 340 in its contract negotiations with Morrell, and that there was no underlying dispute between Local 304A and Morrell.
 
 
 4
 Anticipating that Local 304A might take action in support of the Ark City employees, Morrell informed Local 304A by letter on July 30, 1986, that it believed that the no-strike clause[2] in their collective bargaining agreement prohibited Local 304A from honoring a picket line set up in Sioux Falls by Local 340. In that letter, Morrell stated that any Sioux Falls employees who participated in such a strike were subject to termination. On August 4, 1986, the first date Local 304A members refused to cross Local 340's picket line, Morrell sought a temporary restraining order, preliminary injunction, and permanent injunction. That same day, before the issues could be addressed by the district court, Local 340 dismantled its picket line and Local 304A made an unconditional offer to return to work.[3] Although the Sioux Falls employees did return to work on the evening of August 4, Morrell took disciplinary action against the strike participants by noting each employee's absence on August 4 as "unexcused" in its files. In protest of Morrell's action, Local 304A filed a class grievance.
 
 
 5
 On August 15, when the members of Local 304A refused to cross a new picket line established by Local 340, Morrell applied for and obtained a temporary restraining order. After an evidentiary hearing on August 18, 1986, at which Local 304A moved the district court to vacate the TRO and deny Morrell further injunctive relief, the district court granted Morrell a preliminary injunction which prohibited Local 304A and all persons acting in concert with its members from participating in work stoppages at the Sioux Falls plant. The district court ordered that the issues raised in the court's memorandum opinion and order be submitted to arbitration. In its memorandum opinion, the district court found that the August 4 strike was a sympathy strike which could not properly be enjoined. However, relying on the fact that the second work stoppage occurred after the union had submitted an unconditional offer to return and had filed the class grievance, it concluded that the August 15 action was only in the guise of a sympathy strike and had been transformed into a dispute over underlying arbitrable issues. Because it had concluded that the second strike was over an arbitrable grievance covered by the terms of the parties' collective bargaining agreement, the district court determined that the second strike could be enjoined. After unsuccessfully seeking a stay from the district court pending appeal, Local 304A petitioned this court for an expedited hearing, which we granted.
 
 
 6
 To determine whether the district court properly enjoined Local 304A's strike activities, we start with the congressional limitation on a federal court's jurisdiction to issue orders enjoining a strike, set out in section 4 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 104.[4] A narrow exception to this statutory prohibition from enjoining strikes was established by the Supreme Court in Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which allows an injunction to issue only if the strike is over a dispute which under the parties' collective bargaining agreement should be submitted to arbitration. In two subsequent cases, the Supreme Court emphasized the narrowness of the Boys Markets exception and held that a Boys Markets injunction may not issue unless the strike has been triggered by an arbitrable dispute. See Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n., 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982), and Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) (both cited in Purex Corp. v. Automotive, etc. Employees Union, 705 F.2d 274, 276 (8th Cir.1983)).
 
 
 7
 In gauging the intended scope of the Boys Markets exception to the anti-injunction rule, this court has observed that
 
 
 8
 [t]he Supreme Court's opinions in Buffalo Forge and Jacksonville Bulk Terminals analyze the Boys Markets exception as a means for effectuating the national policy favoring agreements to arbitrate, and not as an enforcement mechanism for no-strike clauses. Both Buffalo Forge and Jacksonville Bulk Terminals distinguish between strikes where the underlying dispute is arbitrable and those where the legality of the strike itself is arbitrable. Only in the former category are strikes subject to injunction, because only there does the strike represent a breach of the Union's agreement to arbitrate.
 
 
 9
 Purex Corp., 705 F.2d at 276; see also Peabody Coal Co. v. International Union, UMWA, 430 F.Supp. 205, 207 (E.D.Mo.1977). Moreover, even in Boys Markets, the Supreme Court cautioned that its views should not be construed to find "that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance." Boys Markets, 398 U.S. at 253-54, 90 S.Ct. at 1593-94.
 
 
 10
 Applied to the facts of this case, the anti-injunction principles just outlined require that the district court find that Local 304A's strike activity represented a union response to a dispute over a grievance which the union was contractually bound to arbitrate. See National Rejectors Indus. v. United Steelworkers, 562 F.2d 1069, 1075 (8th Cir.1977), cert. denied, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 517 (1978), (citing Buffalo Forge, 428 U.S. at 409, 96 S.Ct. at 3148). In the findings of fact contained in its order granting a preliminary injunction, the district court found that "[t]he [August 4, 1986] picket line was honored to show support for Local 340 workers" and that on August 15, 1986 "the workers again refused to cross a second picket line established at the Sioux Falls plant by Local 340." These findings, which are supported by the record, identify the underlying cause of strike activity on both dates to be Local 304A's response to the appearance of Local 340 pickets, motivated by a desire to show support for the Ark City employees in Local 340's contract negotiations with Morrell. To the extent that the district court found that the first strike was a sympathy strike, that the parties' no-strike clause did not prohibit sympathy strikes, and that the August 4 strike could not be enjoined by a federal court, we agree with the district court's analysis. However, although the district court made no finding of fact that either strike at the Sioux Falls plant was motivated by a labor dispute between Local 304A and Morrell, and did not find that members of Local 304A struck at any time other than the two separate dates that Local 340 pickets appeared in Sioux Falls, the district court concluded as a matter of law that Local 304A's refusal on August 15 to cross Local 340's picket line was precipitated by the grievance filed by Local 304A to protest Morrell's discipline of employees who participated in the August 4 strike. The district court concluded that the second strike therefore fell within the Boys Markets exception and could be enjoined. For this conclusion, we can find no support in the record, in the district court's findings of fact, or in the applicable case law.
 
 
 11
 No evidence indicates that Local 304A was attempting to circumvent its contracted-for obligation to process this dispute through normal arbitration channels by striking. To the contrary, the record shows that Local 304A has sought, not avoided, arbitration of the grievance. Moreover, arbitration of the grievance will not resolve what the district court itself found to underlie Local 304A's strike actions--the desire to show support for Local 340. The evidence does indicate that a work stoppage occurred at the Sioux Falls plant on August 15 only when Local 340 pickets reappeared. The chronology of events on which the district court relied cannot alone support an inference that the August 15 strike was over Morrell's disciplinary acts, especially when the evidence at the hearing uniformly supports a conclusion that the August 15 strike, like the August 4 strike, was solely a sympathy strike in support of Local 340. Nothing in the record or in the district court's findings supports an inference of a cause and effect relationship between the grievance and the August 15 strike.
 
 
 12
 Further, the district court's reliance on Complete Auto Transit, Inc. v. Reis, 614 F.2d 1110 (6th Cir.1980), aff'd on diff. grounds, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), to conclude that the August 15 work stoppage was transformed into a strike over an arbitrable grievance is misplaced. In Complete Auto, the evidence in the record indicated that although the original non-arbitrable event causing the strike was resolved, the strike continued over an admittedly arbitrable dispute. Id. at 1111. The Sixth Circuit held that in determining the cause of a strike for purposes of issuing an injunction, a district court should consider what the strike was "over" at the time of its decision rather than what "precipitated" the strike in the first place. Id. at 1114.
 
 
 13
 Here, the event causing the August 4 sympathy strike, Local 340's stalled contract negotiations with Morrell, remained unresolved as of August 15. The fact that Local 304A filed a grievance indicates that Local 304A was consciously invoking arbitration machinery to resolve the dispute. The Sixth Circuit's reasoning in Complete Auto does not teach that whenever a grievance is pending which arose out of a strike that could not be enjoined, a union cannot subsequently engage in another protected strike. We know of no court which has relied on Complete Auto's "transformation" analysis to find an injunction of a strike warranted. Nor does any case of which this court is aware, including Complete Auto, hold that because a grievance is pending a subsequent strike is presumptively undertaken in response to the dispute underlying that grievance. Moreover, the Sixth Circuit itself has apparently questioned the continuing vitality of Complete Auto's transformation theory. Although Complete Auto was affirmed on other grounds on appeal, in a subsequent case discussing the prerequisites to issuance of an injunction pending arbitration, that court noted that "the Supreme Court has not addressed the validity of the transformation analysis." International Union United Automobile, etc. Workers v. Lester Eng'g Co., 718 F.2d 818, 824 n. 1 (6th Cir.1983) (citing Jacksonville Bulk Terminals, 457 U.S. at 723 n. 22, 102 S.Ct. at 2685 n. 22). Complete Auto lends no support to the district court's conclusion that the August 15 strike was not a sympathy strike to the same extent as was the strike on August 4.[5]
 
 
 14
 The uncontradicted evidence in the record indicates that although Local 304A's filed grievance resulted from Morrell's retaliation for Local 304A's participating in the August 4 strike, the grievance did not precipitate Local 304A's participation in the August 15 strike. Neither the record nor the district court's own findings support the district court's conclusion that the August 15 strike was not a sympathy strike but had been transformed by virtue of the filed grievance into a strike over an arbitrable matter. Because there is no evidence in the record to support the district court's finding that the August 15 strike was over an arbitrable grievance, the strike does not fall within the narrow Boys Markets exception to the anti-injunction rule. Under section 4 of the Norris-LaGuardia Act, the district court was without jurisdiction to issue a preliminary injunction.[6]
 
 
 15
 The decision of the district court is reversed,[7] and the district court is directed to vacate its order granting the preliminary injunction.
 
 
 
 [1]
 The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, presiding
 
 
 [2]
 The no-strike clause reads:
 Provisions having been made by this Agreement and local agreements for the peaceful and orderly settlement of any disputes which may arise between Company and the Union or local Unions or any Employee or Employees, it is agreed that during the term of this Agreement there shall be no strike, stoppage, slowdown, or suspension of work on the part of the union or any local Union or any Union member or lockout on the part of the Company on account of such disputes until after an earnest effort shall be made to settle all such matters in the manner provided in the respective agreements.
 Article II Sec. 5, Agreement Between John Morrell & Co. and Local 304A and the International Union of the United Food and Commercial Workers, Nov. 20, 1985--Nov. 19, 1988.
 
 
 [3]
 Local 304A's unconditional offer to return to work stated: "The picket line is coming down. We're making an unconditional offer to return to work on behalf of the membership of Local 304A, with the regular shifts, starting with tonight."
 
 
 [4]
 Section 4 of the Norris-LaGuardia Act provides, in pertinent part:
 No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute * * * from doing, whether singly or in concert, any of the following acts:
 (a) Ceasing or refusing to perform any work or to remain in any relation of employment.
 29 U.S.C. Sec. 104.
 
 
 [5]
 In concluding that the August 15 work stoppage was in the "guise" of a sympathy strike, the district court emphasized that Local 304A had made an unconditional offer to return to work which the district court "accepted." Citing no authority for its conclusions, the district court interpreted the "offer" as becoming part of the collective bargaining agreement, presumably concluding that in making the offer Local 304A waived its right to engage in any future strike of any kind. We believe that this interpretation of the events of August, 1986 overlooks the function of unconditional offers in labor relations as a means to conclude a strike and reinstate strikers to their original jobs without the union members being displaced by replacement workers. See, e.g., NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 380-81, 88 S.Ct. 543, 546-47, 19 L.Ed.2d 614 (1967); C.H. Guenther & Son, Inc. v. NLRB, 427 F.2d 983, 985 (5th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970). Laidlaw Corp. v. NLRB, 414 F.2d 99, 103 (7th Cir.1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). The right of employees to engage in sympathy strikes in support of another union is protected under provisions of the National Labor Relations Act, see 29 U.S.C. Secs. 157, 163, although employees may waive this right if the waiver is clear and unmistakable. Amcar Division, ACF Indus. Inc. v. NLRB, 641 F.2d 561, 566 (8th Cir.1981). However, we do not believe that it is proper to construe this unconditional offer to return to work as a new promise, incorporated in the collective bargaining agreement, in which Local 304A waived its right to engage in further lawful strike activity
 
 
 [6]
 Although Morrell argues that our decision in Campbell "66" Express, Inc. v. Rundel, 597 F.2d 125 (8th Cir.1979), is controlling here, we do not believe that case supports a different result. In Campbell, the district court found that the facts in the record demonstrated that the union had attempted to circumvent the result of a binding grievance proceeding by picketing the company. The district court made findings, supported by the record, that the purpose of the picketing was not primarily informational, as the union claimed, but was designed to get an employee rehired whose termination had been upheld by an arbitrator. Here, neither the record evidence nor the district court's findings support a conclusion that Local 304A's stated reasons for striking were pretextual
 
 
 [7]
 Morrell has also filed a complaint seeking money damages for harm allegedly incurred through Local 304A's activities. The merits of Morrell's request for damages has never been addressed, and we do not decide those issues here